335 So.2d 261 (1976)
Laura Jean Hill GAMMON, Appellant,
v.
Ernest COBB, Appellee.
No. 46616.
Supreme Court of Florida.
June 30, 1976.
*262 J.E. Satterfield, Clearwater, for appellant.
SUNDBERG, Justice.
This cause reaches us on direct appeal from the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida. We have jurisdiction of the appeal pursuant to Article V, § 3(b)(1), Florida Constitution, and Rule 2.1 subd. a (5)(a), Florida Appellate Rules, in that the Circuit Court initially and directly passed upon the validity of Chapter 742, Florida Statutes, by holding that such statute is not unconstitutional, either facially or as applied to the circumstances of the instant case. Appellant filed suit in the Circuit Court below alleging in her complaint that appellant and appellee had cohabited together as man and wife for some twenty years, but that at the time they commenced cohabiting each had a living spouse by prior marriages, which had not been dissolved. Appellant further alleged that as a consequence of the cohabitation the parties were delivered of seven children and that until shortly before the filing of the instant suit the appellee accepted paternity of the children and regularly contributed to their support. The parties are now separated and at disagreement, and by her complaint appellant sought to have appellee designated as the natural father of the children and to require that he support them.
Appellee filed a Motion to Dismiss the complaint on the ground that on its face the appellant was without standing to seek the relief prayed for in that under Chapter 742, Florida Statutes, actions are limited to unmarried women, an essential allegation absent from the appellant's complaint. The very able trial judge, upon the authority of Lorenz v. Jiminez, 163 So.2d 500 (Fla.App.3d 1964), dismissed the complaint with prejudice and ordered that the cause be removed from the court's registry of pending cases. In the Lorenz case, supra, the District Court of Appeal of Florida, Third District, affirmed the dismissal of a complaint on the ground that it failed to allege that the child whose paternity was sought to be established was born out of wedlock to an unmarried woman, and the trial court in the case sub judice concluded on the authority of that case that the unmarried status of the plaintiff in a paternity proceeding is jurisdictional under Chapter 742.
Thereupon plaintiff timely filed a Motion for Rehearing and Amendment of Order *263 on Motion to Dismiss, in order to gain a ruling on the constitutionality of Chapter 742, Florida Statutes, as applied to the instant case. The trial court, accordingly, entered its amended order on defendant's Motion to Dismiss, ordering and adjudging that Chapter 742, Florida Statutes, is not unconstitutional, either facially or as applied to the circumstances of this cause, citing as authority the opinions of this Court in Kennelly v. Davis, 221 So.2d 415 (Fla. 1969) and Brown v. Bray, 300 So.2d 668 (Fla. 1974). This appeal ensued.
The issue squarely presented again to this Court, in light of our decision in Kennelly, supra, is whether the Legislature may constitutionally limit actions for determination of paternity and support of illegitimate children by the natural father to unmarried mothers of illegitimate children, precluding married mothers of illegitimate children such relief. The appellant asserts in the first instance that Chapter 742, Florida Statutes, should be so construed by this Court as to judicially excise the word "unmarried" from the statute; and if we are unwilling so to do, then, in the alternative, to rule that the statute violates the provisions of Article I, § 2 of the Constitution of the State of Florida and Amendment Fourteen of the Constitution of the United States as depriving equal protection; of Article I, § 21 of the Constitution of the State of Florida, providing that the courts shall be open to every person for the redress of any injury; and of Amendment XIX of the United States Constitution prohibiting discrimination by reason of sex.
The pertinent sections of the statute under attack are § 742.011, Florida Statutes, providing:
"Any unmarried woman who shall be pregnant or delivered of a bastard child may bring proceedings in the circuit court, in chancery, to determine the paternity of such child." (Emphasis supplied)
Also, § 742.10, Florida Statutes, providing:
"This chapter shall be in lieu of any other proceedings provided by law for the determination of paternity and support of bastard children."
The Florida Bastardy Act had its genesis in 1828. Act of January 5, 1828, Section 1. At that time proceedings were initiated by a complaint before a justice of the peace or magistrate, who, upon a finding of sufficient grounds, ordered the defendant to appear before the circuit court. Consequently, the proceedings were quasi-criminal in their inception but became civil once they reached the circuit court. State v. Rowe, 99 Fla. 972, 128 So. 7 (1930). Today the proceedings are civil in nature from their inception. Section 742.011, Florida Statutes. As initially enacted in 1828 the law provided that any "single woman who shall be pregnant or delivered of a child, who by law would be deemed and held a bastard" was entitled to bring an action for a limited recovery "not exceeding fifty dollars yearly," for expenses attending birth, etc. (Emphasis supplied). This provision was changed by Chapter 26, 949, Laws of Florida 1951, to read that any "unmarried woman who shall be pregnant or delivered of a bastard child may bring proceedings" and then provided for a more liberal allowance for the expenses involved. (Emphasis supplied). In Sanders v. Yancey, 122 So.2d 202 (Fla.App.2d 1960) it was concluded that the indicated change in wording was not sufficient to merit a construction of the statute other than that placed on the wording of the former provision by the Supreme Court.
Although this Court and the District Courts of Appeal of this state in Kennelly, supra, and Lorenz, supra, have previously held that a married woman may not maintain an action to prove the illegitimacy of her child, the rule is just the contrary with respect to a husband. As stated in Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163 (1944) "... The rule is *264 well established in this country that the husband may make the attack, but in so doing he must overcome the strong presumption of legitimacy by clear and satisfactory testimony." In that case the Court reiterated the almost universal rule of Anglo-American jurisprudence that where the legitimacy of a child born in wedlock is questioned by the husband and reputed father, one of the strongest rebuttable presumptions known to the law is required to be overcome before the child can be bastardized.
We turn now to the appellant's assertion that this Court might properly construe out the word "unmarried" in Section 742.011, Florida Statutes. Although we might be greatly tempted to engage in such statutory construction to reach a desirable result in this case, no sort of mental gymnastics available to the writer can bring about an intellectually honest construction of the word "unmarried" to include a woman who is legally married to other than the natural father of the child at the time of that child's conception and birth. Laudable results cannot justify patently ignoring a plain term such as "unmarried." Appellant urges us to determine that she was "de facto" unmarried at the time the children here involved were conceived since appellant has had no contact with her legal husband for a period of twenty years and has cohabited with appellee during that period of time. This is too fragile a basis upon which to bottom a decision. In every suit brought by a married woman under Chapter 742, Florida Statutes, it would be incumbent upon the trial judge to inquire into every aspect of the then existing relationship between the plaintiff and her legal husband to ascertain whether the marriage relationship has been de facto dissolved. The result would be to convert each such Chapter 742 proceeding into a quasi dissolution of marriage proceeding. At what point in time and under what circumstances does she become "unmarried"? What standing would the legal husband have to controvert the assertion by the wife that she has become "de facto unmarried"?
Since we are unable to construe the statute in the fashion asserted by the appellant and are unwilling to accept a principle of law that a woman can somehow become "de facto unmarried" there remains the question of the constitutionality of § 742.011, Florida Statutes. Plainly stated, does the statute deny the children of the appellant equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article I, § 2 of the Constitution of the State of Florida or access to the courts mandated by Article I, § 21 of the Constitution of the State of Florida? The test, basically, is whether the classification made by the Legislature in § 742.011, Florida Statutes, is reasonable. As pointed out in McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) in order for a statutory classification not to deny equal protection, it must rest on some difference that bears a just and reasonable relation to the statute in respect to which the classification is proposed. Were we restricted to an examination of Chapter 742, Florida Statutes, and the cases expressly construing it we would be impotent to entertain an equal protection attack on its constitutionality, particularly in view of the principle binding upon this Court that "all reasonable doubts as to the validity of statutes under the Constitution are to be resolved in favor of constitutionality." In re Estate of Caldwell, 247 So.2d 1 (Fla. 1971); Capelouto v. Orkin Exterminating Co. of Florida, 183 So.2d 532 (Fla. 1966); Kass v. Lewin, 104 So.2d 572 (Fla. 1958); Waybright v. Duval County, 142 Fla. 875, 196 So. 430 (1940). The argument can be stated that it is reasonable to classify married women as not being entitled to prosecute a suit under the statute because their very success in the suit results in the child being judicially determined and labelled a bastard in the face of the presumption that the child is legitimate, whereas in the case of an unmarried *265 woman the child carries the stigma of bastardy before commencement of any suit. However, we are not obliged to consider this matter in a vacuum, without recourse to developments in society as well as in the law occurring either contemporaneously or subsequent to the cases reviewed above which have heretofore passed upon the constitutionality of Chapter 742, Florida Statutes.
In society  like it or not (and the writer does not like it)  the fabric of our society related to the institution of marriage has been sorely rent and promiscuity has been the result. Four decades ago 89,500 illegitimate children were born in the United States.[1] By contrast, over 318,000 illegitimate children were born in the year 1967.[2] The illegitimacy rate grew 16.9 per thousand unmarried women between 1940 and 1967.[3] Obviously, these statistics cannot be correlated to illegitimate offspring of married women, but they demonstrate the magnitude of the problem of illegitimacy in our society today and the attendant financial burden to the state if the natural parents are not made to bear that burden to the fullest extent possible. This consideration points up, of course, the real party in interest in this matter  the innocent child. Under the principles of Eldridge and Kennelly, supra, the anomalous situation exists where the reputed father of an illegitimate child born to his wife can attack the child's parentage and be relieved of the obligation to support the child, but at the same time the wife may not maintain a suit to compel the putative or natural father to provide support for the child. The rhetorical question is presented  who is the loser in this rondo? Obviously, it is the innocent child. What public or social purpose is served by such result? Does it inhibit promiscuity on the part of married women? We submit that there is no such evidence.
In law  although the Legislature declared in § 742.10, Florida Statutes, that the chapter is in lieu of any other proceeding provided by law for the determination of paternity and support of bastard children, the public policy of the State of Florida for recognition and support of illegitimate children by the natural father (regardless of the marital status of the mother) has been expressed in other statutes and decisional law, notwithstanding such legislative enunciation. Section 440.02(13), Florida Statutes, a part of the Workmen's Compensation Act passed in 1935, provides for support under that Act of an "acknowledged" dependent illegitimate child. This Court has permitted such "acknowledgment" of an illegitimate child conceived less than four days before its father's death to be proven by hearsay and other evidence. See Ezell-Titterton, Inc. v. A.K.F., 234 So.2d 360 (Fla. 1970). Such, in effect, was a "proceeding to determine paternity" under the Workmen's Compensation Act not barred by § 742.10, Florida Statutes. By a provision initially enacted in 1955, now appearing as sub-section 39.11(2)(e), Florida Statutes, when any child is adjudicated by the juvenile division of the circuit court to be a dependent child the court has the power to order the natural father of an illegitimate child "who has acknowledged his paternity in writing before the judge" to pay to the person or institution having custody of such child reasonable sums of money for the "care, support, maintenance, training and education of such child." Does this proceeding not "determine paternity"?
In 1965 the Legislature amended Chapter 856, Florida Statutes, by adding sub-section 856.04(2), Florida Statutes, making it a crime to withhold support from an illegitimate child whose paternity has been adjudged in this or any other jurisdiction. This statute allows foreign jurisdictions *266 to determine paternity by a procedure and under circumstances which may be wholly repugnant to Chapter 742, Florida Statutes. There are a number of jurisdictions which do not require that the mother be unmarried to sustain a paternity suit as does Florida. See, e.g., Uniform Act on Paternity which has been adopted by Kentucky, Mississippi, Montana and Utah; also Franklin v. Julian, 30 Ohio St.2d 228, 283 N.E.2d 813 (1972), where the "unmarried" requirement was held to deny equal protection and therefore unconstitutional. Consequently, the illegitimate child of a married woman who has had his paternity judicially established in one of the above-named foreign jurisdictions may have his father prosecuted criminally in Florida, but Chapter 742, Florida Statutes, would prohibit a similar illegitimate child situate in Florida from receiving the benefits which accrue under Chapter 742, Florida Statutes. Comity or full faith and credit might require Florida to recognize a status of paternity adjudged in a sister state. The crime of non-support completed in that state might require Florida to render the father on extradition warrant. But in the absence of a Florida statute, no foreign judgment, of status or otherwise, can constitutionally require Florida to prosecute criminally any man for an act or omission in Florida which is not criminal under Florida law.
In 1972, the Legislature amended the wrongful death statute to include within the definition of "survivors" an illegitimate child of a father who "has recognized a responsibility for the child's support." Sub-section 768.18(1), Florida Statutes. In a case decided by the Fourth District Court of Appeal of Florida construing the classification of "survivors" under the wrongful death statute prior to the 1972 amendment, that court concluded, upon the authority of Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), that illegitimate children of the deceased were entitled to recover under the statute where they were dependent on the deceased, rejecting the contention that such entitlement should be denied them because the decedent had not prior to his death acknowledged them to be his children as provided in § 731.29, Florida Statutes, as it then existed. Evans v. Atlantic Cement Co., 272 So.2d 538 (Fla.App. 4th 1973).
In Sacks v. Sacks, 267 So.2d 73 (Fla. 1972) this Court in reviewing a decision arising out of a divorce proceeding held that the husband was required to provide support for his natural child which was conceived by his wife while legally married to a former husband. The Court, speaking through Justice Adkins, distinguished the principle enunciated in Eldridge, supra, on the basis that the natural father had admitted his fatherhood and then effected a marriage to the child's mother after her divorce from her former husband. Nonetheless, the result is the same in that it permitted a woman who was legally married when the child was conceived to rebut the presumption that her former husband was the father of the child thereby imposing the obligation on the natural father to provide support. Although the factual situation in Sacks, supra, is distinguishable, the principle espoused therein, as follows:
"The courts of this State have created a strong presumption in favor of legitimacy to protect the interests of the child when the child was either born or conceived in wedlock. Gossett v. Ullendorff, 114 Fla. 159, 154 So. 177 (1934), and Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163 (1944). This presumption as noted above was created to protect the welfare of the child. To now utilize this same presumption to deny this child support is to destroy the very reason for its existence. The welfare of the child demands that we recognize and honor not the fiction, but the underlying purpose upon which the fiction was created." (Emphasis supplied)
is applicable.
An illegitimate child's right to support cannot be contracted away by its *267 mother. A release executed by her is invalid to the extent that it purports to affect the rights of the child. Cf. Shinall v. Pergeorelis, 325 So.2d 431 (Fla.App. 1st 1975); Walker v. Walker, 266 So.2d 385 (Fla.App. 1st 1972). The mother is merely the trustee to receive the funds and simply convert them into relief for the children. The obligation of support is for the benefit of the child. Being only a conduit, she has no right to control benefits due and owing to the child by its natural father by fixing her marital status.
It can be seen, then, that either by statute or decisional law illegitimate children have been classified as being entitled to support from their natural fathers in the following instances:
a) a child of an unmarried woman under the provisions of Chapter 742, Florida Statutes;
b) a child whose father has acknowledged paternity in writing before a judge in the juvenile division of the circuit court, without regard to the marital status of the mother, pursuant to § 39.11(2)(e), Florida Statutes;
c) a child whose paternity has been adjudicated in a foreign jurisdiction, by whatever procedure or whatever evidence may be proper there, without regard to the restrictions on such procedure in Florida, pursuant to sub-section 856.04(2), Florida Statutes;
d) vicariously under sub-section 440.02(13), Florida Statutes, the Workmen's Compensation Act, where the child has been "acknowledged" even by circumstantial evidence, by the father;
e) vicariously through damages for wrongful death where the natural father "has recognized a responsibility for the child's support" pursuant to sub-section 768.18(1), Florida Statutes; and
f) where the natural father marries the mother subsequent to divorce from the man to whom she was legally married at the time the child was conceived. Sacks v. Sacks, supra.

It will be seen from the foregoing analysis that the State of Florida has engaged in numerous classifications without the confines of Chapter 742, Florida Statutes, permitting an illegitimate child to derive support from its natural father, irrespective of the marital status of its mother at the time of its conception, either directly during the father's lifetime or indirectly through recovery of compensation from the father's employer or from a tortfeasor causing the death of the father. Therefore, to require that the mother of an illegitimate child be legally unmarried at the time of the child's conception in order to bring suit under the provisions of § 742.011, Florida Statutes, is an unreasonable and invidious discrimination against such child, depriving the child of equal protection of the law mandated by Article I, § 2 of the Constitution of the State of Florida and the Fourteenth Amendment to the Constitution of the United States. In a case such as the one at bar the children are deprived of support by the natural father while at the same time the reputed father is permitted under the principles set forth in Eldridge, supra, to rebut the presumption of his paternity thereby obviating any necessity for support on his part. It should be noted that if this result were permitted to occur, the children would also be deprived from inheriting from either father in case of intestacy under the provisions of § 732.108(2), Florida Statutes, which provides:
"For the purpose of intestate succession in cases not covered by § 732.108(1), a person born out of wedlock is a lineal descendant of his mother and is one of the natural kindred of all members of the mother's family. The person is also a lineal descendant of his father and is one of the natural kindred of all members of the father's family, if:
(a) The natural parents participated in a marriage ceremony before or after *268 the birth of the person born out of wedlock, even though the attempted marriage is void; or
(b) The paternity is established by an adjudication before or after the death of the father." (Emphasis supplied)
Under the situation postulated, the legal husband of the appellant is not the natural parent of appellant's children, but at the same time appellant would be precluded from establishing by adjudication, before or after his death, the paternity of the natural father. This further serves to point up the discrimination inherent in § 742.011, Florida Statutes.
Assuming, as we clearly must, that the purpose of the statute is to (i) protect the interests of a child illegitimately conceived and (ii) to impose an obligation on the natural father to provide support, it is the relationship between the natural father and the child which should be controlling rather than the marital status of the mother. This position serves two remedial purposes: it converts the natural father's moral obligation into a legal obligation to support, and it relieves the public of the obligation to provide support for the child. In light of the societal needs of today the oft-quoted statement of Oliver Wendell Holmes seems particularly appropriate:
"The life of the law has not been logic; it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed." Oliver Wendell Holmes, Common Law 1 (1881).
Nothing in this opinion should be construed to imply that we recede from the standard of proof enunciated in Eldridge, supra, with respect to paternity suits, but we do hereby expressly recede from our decision in Kennelly v. Davis, supra, and the cases therein cited insofar as they prohibit suit by a married woman to gain the benefits for her illegitimate child under Chapter 742, Florida Statutes.
In view of the foregoing conclusions, we hold that portion of § 742.011, Florida Statutes, which limits actions thereunder to unmarried women to be unconstitutional in contravention of Article I, § 2 of the Constitution of the State of Florida and the Fourteenth Amendment to the Constitution of the United States without impairing, however, the force or effect of the balance of said section or Chapter 742, Florida Statutes, as a whole. Accordingly, the order of the trial court is reversed and this cause is remanded to the trial court for further proceedings not inconsistent herewith.
It is so ordered.
OVERTON, C.J., and ROBERTS, ADKINS and HATCHETT, JJ., concur.
BOYD, J., dissents with an opinion.
ENGLAND, J., dissents with an opinion.
BOYD, Justice (dissenting).
The majority opinion recedes from Kennelly v. Davis, 221 So.2d 415 (Fla. 1969), which held Section 742.011, Florida Statutes, does not unconstitutionally deny equal protection of the laws. I believe Kennelly is still good law. The equal protection clause is violated only when the classification made by an act is arbitrary and unreasonable. Daniels v. O'Connor, 243 So.2d 144 (Fla. 1971). The jurisdictional requirement that a woman be unmarried before a court may entertain a paternity suit brought by her is a reasonable classification because children of married women are presumed to be legitimate and said presumption is highly beneficial. Under today's decision a married woman seeking the pecuniary advantage of child support from a putative father may seek an adjudication *269 which holds that her husband is not the father of her child. The result is that innocent children may be stamped illegitimate in the face of the presumption that they are legitimate. It is reasonable for the Legislature to classify only unmarried women as able to bring paternity suits to prevent presumed legitimate children from losing the benefit of the presumption.
Striking the statute is objectionable for another reason. Section 732.108, Florida Statutes, Chapter 74-106, Laws of Florida, permits a child born out of wedlock to inherit from an intestate father if paternity is established by adjudication. This statute was passed as part of a reformed Probate Code while Section 742.011, Florida Statutes, was not yet declared unconstitutional. The Legislature has reason to limit claims by unacknowledged children to intestate inheritance as much as possible.[1] The majority opinion opens the door to children of married women, as well as children of unmarried women to claim intestate inheritances from men who have not acknowledged their paternity or been so adjudicated. Requiring living fathers to support any and all of their children, regardless of legitimacy, is a matter entirely unrelated to inheritances. A living father can deny and often disprove paternity. The legitimate heirs would have extreme difficulty in refuting such claims against an estate. Since the statute of limitations does not run against minors, the question arises as to the disposition of property inherited by legitimate heirs with the possibility that years later claims for said property might be made by illegitimates.
The magnitude and complexity of the question requires a legislative, not judicial, solution.
I respectfully dissent.
ENGLAND, Justice (dissenting).
The Court has undoubtedly reached a just result for this case, but I cannot agree that the conclusion properly flows from the reasoning employed to get there.
The Court has achieved by lengthy judicial legerdemain precisely what it said at the outset it was unwilling to do  strike the word "unmarried" from Section 742.011. I am not persuaded by the Court's excursions into the Workmen's Compensation Act of 1935, the comity features of our criminal laws, the 1972 wrongful death statute, or the acknowledged paternity situation found in our juvenile justice law. The issue in this case is support, and the only applicable statute which is available to provide it is encased in a chapter of our laws which expressly states that the sole mechanism for support of bastard children is contained within that chapter. Under these circumstances I cannot overcome my belief that, despite the apparent injustice in the application of this statute to the facts in this case, the Legislature is the only forum constitutionally authorized to change the wording of the statute.
NOTES
[1] U.S. Bureau of Census, Statistical Abstract of the United States, table 59 at 50 (1969).
[2] Id.
[3] Id. In 1940 the illegitimacy rate was 7.1, in 1967, 24.0.
[1] See In re Estate of Caldwell, 247 So.2d 1 (Fla. 1971).