338 So.2d 563 (1976)
Shadrock WILLIAMS et al., Appellants,
v.
ESTATE of J.D. LONG, Deceased, Appellee.
No. AA-192.
District Court of Appeal of Florida, First District.
October 26, 1976.
*564 S. Gunter Toney, Tallahassee, for appellants.
Thomas C. Wilkinson, Marianna, for appellees.
McCORD, Judge.
This is an appeal from an order determining beneficiaries in the Estate of J.D. Long, deceased. Appellant Shadrock Williams is the administrator of the estate, and the other appellants are the children of the decedent and his wife, Refair Long, who died in 1964. Appellees are the three children of Velma Brunson (Long) who contend they are the illegitimate children of the decedent and Velma. The order here appealed found appellees to be the illegitimate children of Long and entitled to participate *565 and share in his estate in the same manner as if they were born in lawful wedlock.
Long's original wife was Refair Long, and she continued to be his legal wife until she died in 1964. Appellants (except the administrator of the estate) are the children of that marriage as aforesaid. Velma testified that she began keeping company with Long in 1958 although Long was still married and living with his wife, Refair; that three children (the appellees) were born to her in 1960, 1963, and 1965 respectively; that Long was the father and that he was at the hospital in Georgia when each of the children were born; that she previously had married one Manuel Brunson in 1945 and that he left the same year and she did not see him again until 1974; that she never obtained a divorce from him. An affidavit of Manuel Brunson was filed by the administrator in which Brunson stated that he married Velma in 1945 in Georgia and lived with her until 1946; that he moved to Miami and married two other women without having obtained a divorce from Velma; that he had never received divorce papers from her.
The last name appearing on the birth certificates of two of the appellee children was Brinson (from Brunson). The last name appearing on the birth certificate of the third child was Borders (the mother's maiden name).
Velma further testified that Long desired the children to carry his name but was told that the name of an unmarried father was not accepted. After the death of Long's first wife, Refair, in 1964, he moved in with Velma and subsequently married her (though it was not a valid marriage because she had never been divorced from Brunson). Velma produced an application for a family insurance policy signed by Long on February 22, 1969. The policy listed Velma as Long's wife and the three appellees as his children. Carl E. Larson, the insurance agent who procured the application and had the insurance policy issued, testified by deposition that he visited Long's home twice and that Velma and the appellee children were there. He could not recall whether Long or Velma gave him the names of the children to list as dependents. Stella May, a public health nurse, testified that Long brought his wife (Velma) and the three children to her for medical treatment and on one occasion he requested her advice on how to get the names of the children changed on their birth certificates.
The trial judge in the order here appealed made the following findings (finding No. 1 is omitted as it relates only to the four original children of the marriage between Long and Refair):
"2. That in the year 1958, the deceased J.D. Long, although then married to Refair Long, began dating and having sexual intercourse with Velma Brunson (Long). That Velma Brunson (Long) had three children, to-wit: Larry Dean Long, born on August 28, 1960, Linda Faye Long, born on September 23, 1961 and Ronnie Arthur Long, born on February 4, 1963.
3. That J.D. Long held the children, Larry Dean Brinson (Long), Linda Faye Brinson (Long) and Ronnie Arthur Borders (Long) out to all the world as his. That J.D. Long went to the hospital with Velma Brunson (Long) each time these children were born; that he recognized his responsibility as a father to these children by taking them on a number of occasions to the public health nurse, and on one occasion, sought information from the public health nurse as to how he could change these children's name.
4. That J.D. Long, after the death of his wife, Refair Long, entered into a ceremonial marriage with Velma Brunson (Long) in Donalsonville, Georgia on October 16, 1968. Thereafter, he established a home for Velma Brunson (Long) and these three children, Larry Dean Brinson (Long), Linda Faye Brinson (Long) and Ronnie Arthur Borders (Long), and they all lived together until his death on November 19, 1973.
5. That on February 22, 1969, J.D. Long signed an application to Mutual of Omaha Insurance Company for a Family Hospitalization Policy in which he acknowledged *566 Larry Dean Long, Linda Faye Long and Ronnie A. Long as his children. That he signed the application in the presence of a competent witness and that the said application complies with F.S.A. 731.29.
6. That Velma Brunson (Long) was previously married to one Manuel Brunson on November 12, 1945. That sometime during the year 1946, Manuel Brunson left Velma Brunson (Long) and moved to Dade County, Florida. Thereafter, Velma Brunson (Long) did not see or hear from Manuel Brunson for a period of 28 years. That during this 28 year period of time, Manuel Brunson entered into a ceremonial marriage with Mozeana Bryant with whom he lived until her death, and he thereafter entered into a ceremonial marriage with Frances Butler. That neither Manuel Brunson nor Velma Brunson (Long) ever obtained a divorce from each other.
7. That the children known as Larry Dean Brinson (Long), Linda Faye Brinson (Long), and Ronnie Arthur Borders (Long) are the illegitimate children of J.D. Long, deceased, who acknowledged by his application to Mutual of Omaha Insurance Company for a Family Hospitalization Policy of Insurance, in the presence of a competent witness, that he is the father of Larry Dean Brinson (Long), Linda Faye Brinson (Long), and Ronnie Arthur Borders (Long); that the said Larry Dean Brinson (Long), Linda Faye Brinson (Long) and Ronnie Arthur Borders (Long) are beneficiaries of the Estate of J.D. Long and are entitled to participate and share in his estate in the same manner as if they were born in lawful wedlock."
Appellants contend that the court erred in allowing appellees' mother to testify that the children were illegitimate notwithstanding the undisputed evidence that they were born in lawful wedlock (during the existence of the marriage between Velma and Brunson). While the rule of law in Florida in the past has not allowed a married mother to give testimony that her children were illegitimate, the Supreme Court in its recent opinion in Gammon v. Cobb, 335 So.2d 261 (Fla. 1976), has freed a married woman to give such testimony. While that case dealt with a bastardy statute, § 742.011, Florida Statutes (1973), and a married woman's right to bring an action for support against the alleged father of her child, it would be incongruous to say that she can bring a support action and testify that her children are illegitimate but that she cannot so testify in a suit brought by the children to establish their right to inherit from their real father. Although the Supreme Court's opinion in Gammon was handed down after the entry of the order here appealed, we construe the law as it exists at the time of the appeal. Lee v. Louisville & Nashville Railroad Company, 308 So.2d 157 (Fla. 1 DCA 1975); Phillips v. Phillips, 287 So.2d 149 (Fla. 1 DCA 1973). Appellants contend that Gammon should not be applied retrospectively and thereby destroy property rights of appellants acquired at the death of their father. Here, however, if appellees are illegitimate children of Long, their rights as well as those of Long's children born in wedlock vested upon Long's death. Thus, the application of the Supreme Court's decision in Gammon to the case sub judice does not impair vested rights. It simply removes the previous legal impediment which prevented a mother of children born in wedlock from testifying that her children are illegitimate. A decision of a court of last resort overruling a former decision is ordinarily retrospective as well as prospective in its operation unless specifically declared by the opinion to have a prospective effect only. Florida Forest & Park Service v. Strickland, 154 Fla. 472, 18 So.2d 251 (1944).
Appellants' only other contention on this appeal is that "the court erred in finding that appellees are the illegitimate children of decedent based upon sexual intercourse and acknowledgment of paternity by decedent in signing the insurance application in the presence of competent witness, notwithstanding the court's finding that at the time of their respective births their mother was the lawful spouse of Manuel *567 Brunson." § 731.29, Florida Statutes (1973), provides in part as follows:
"(1) Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father. Such illegitimate child shall inherit from his mother and also, when so recognized, from his father, in the same manner as if the child had been born in lawful wedlock... ."
Appellants contend the foregoing statute is not applicable where the acknowledged children were legitimate (they having been born during the existence of the marriage between their mother and a man other than the alleged father). The fallacy of this contention is the assumption that the children are legitimate. Although there is an extremely strong presumption that children born in wedlock are legitimate, such presumption is rebuttable, and we can see no impediment to the application of the above quoted statute as an element of proof in an action brought by children to establish their claim that they are illegitimate children of a decedent.
Finding no error, the order is affirmed.
RAWLS, Acting C.J., and SMITH, J., concur.