356 So.2d 372 (1978)
Christopher HINSON, a Minor by and through His Next Friend and Natural Mother, Dorothy Hinson, Appellant,
v.
Theodore HINSON, State Farm Mutual Automobile Insurance Co., and Ola Mae Davis, As Administratrix of the Estate of John Henry Hinson, Appellees.
No. 76-2012.
District Court of Appeal of Florida, Fourth District.
March 14, 1978.
*373 F. Malcolm Cunningham of Cunningham & Cunningham, and Richard P. Zaretsky, and Thomas A. Hoadley of Hoadley & Gavigan, West Palm Beach, for appellant.
Joel T. Daves III of Burdick & Daves and Stierer, Parker & Schorr, West Palm Beach, for appellee Ola Mae Davis.
DOWNEY, Judge.
Christopher Hinson, a minor, by his next friend and natural mother, Dorothy Hinson, sued Theodore Hinson[1] and State Farm Fire & Casualty Company for wrongful death[2] arising out of the demise of John Henry Hinson, the putative father of Christopher Hinson. Ola Mae Davis, mother of the deceased John Henry Hinson, also brought a wrongful death action against Theodore Hinson and State Farm Fire & Casualty Company. The two cases were consolidated and upon stipulation the defendants paid $10,000.00 into the Registry of the Court, leaving as the sole issue the question of who was entitled to recover the $10,000.00, Christopher or Ola Mae.
Ola Mae contended that Christopher was not John Henry's son. If that were true, Ola Mae was entitled to recover as the next person in line to inherit from John Henry. Christopher and his mother, the ex-wife of John Henry, claimed Christopher was John Henry's son born during wedlock and thus he was entitled to recover the money in the Registry of the Court. Ola Mae prevailed in a trial by jury and Christopher appeals from the judgment entered on the jury verdict.
The evidence reflected that John Henry Hinson and Dorothy O'Neal were married in Jupiter, Florida, in 1955. In 1959 they moved to Jersey City, New Jersey, and lived together until sometime in the early nineteen sixties. Dorothy gave birth to Christopher on October 4, 1963. Christopher's witnesses testified that John Henry and Dorothy lived together in Jersey City until October 1963, while Ola Mae's witnesses testified that John Henry left Dorothy and came back to Jupiter in 1961.
Appellant Christopher has designated four points on appeal which paraphrased are:
1. Whether the court committed error in refusing to admit into evidence the birth certificate of the minor child, Christopher Hinson, issued by the State of New Jersey?

*374 2. Whether the court committed error in refusing to admit into evidence the business records of Rood Landscaping Company which consists of the employment record of the decedent, John Henry Hinson, in 1963?
3. Whether the court committed error in refusing to give plaintiff's instructions Numbers 4, 5, 6 and 7?
4. Whether the court committed error in permitting defendant to present the jury hearsay testimony to the effect that the decedent had told defendant that he did not have any children in violation of the "Dead Man's Statutes"?
We agree that the court's ruling involved on Point II was error, but it was harmless because John Henry's employer testified to the same information which would have been reflected by the records.
With regard to Point I, during the course of the trial Christopher offered in evidence a certified copy of his birth certificate from the New Jersey State Department of Health. Ola Mae objected to the admissibility of the birth certificate and the trial court, after extended argument, sustained the objection on the grounds a) that the birth certificate was not properly authenticated and b) that the certificate was offered to prove the ultimate fact in issue (parentage) and as such it was self serving and hearsay.
We believe the trial court was correct on ground (a) but incorrect on ground (b).
A birth certificate as a public document is admissible as prima facie evidence of the truth of the facts stated therein when those facts are required by law to be furnished. As stated in Gard's Florida Evidence, Rule 302 and the Author's Comment thereto:
"Rule 302. Certificates of Birth and Death  Coroners' Verdicts
"(a) Birth and death certificates, or duly certified copies thereof, are prima facie evidence of the facts required to be recorded therein.
"Author's Comment

"There is common-law basis for the introduction of evidence of vital statistics such as birth and death through the records required to be kept by public authority. The reasoning of the rule extends to certificates required to be made and filed by certain ad hoc public officials such as attending physicians at birth or death, coroners, and undertakers. The evidence is furnished in the form of a certified copy of the certificate from the public authority where the record is required to be kept. The matter is now very largely controlled by statutes as in Florida, which prescribe the factual information which is to go into the certificates, the manner in which it shall be preserved, and the like. Since the certificate is evidence only because it is a required record, it cannot be admissible evidence as to any matter inserted in the certificate not required by law."
To the same effect is the statement in 30 Am.Jur.2d Evidence, § 1007:
"It is generally provided by state law at the present time that records of births are to be kept by the public authorities, and there is no question but that such records or copies thereof, where duly authenticated and relevant to the issues before the court, are admissible in evidence as public records. Also, a birth certificate properly issued by public authorities is generally admissible in evidence in proof of the date of birth.
"It has been held that a birth certificate is admissible in evidence as prima facie proof of the fact of paternity, particularly where a statute makes records of birth prima facie evidence of the fact. .. ."
It is also worthy of note that were this a Florida birth certificate, Section 382.20, Florida Statutes (1975), would make the certificate prima facie evidence of the truth of the statements made herein.
With regard to the authentication of the birth certificate, we believe it was insufficient. The certificate was properly certified in that the State Commissioner of Health certified that the birth certificate *375 attached was a true copy of a record filed in the Department of Health and the seal of the State of New Jersey was affixed thereto. However, since it is a public document from a sister state more is required by way of foundation to fully authenticate the document and make it admissible in the courts of this state.
Florida, of course, has a statute making admissible certified copies of public documents. However, there is no statutory authority in Florida prescribing the manner in which the public documents of a sister state are to be authenticated in order to make them admissible as evidence in the courts of this state. Looking to the general law, we find that it is usually held that a simple certification by the keeper of the record is insufficient to admit a public document of a sister state. In addition to the certification by the keeper of the record that the instrument in question is a true copy of a record contained in his office and the impression of his seal there must be some further authentication of the authority of the keeper, his incumbency and the genuineness of his signature. In 32 C.J.S. Evidence § 673, p. 884, it is stated:
"The purpose of authentication is to guarantee that the original of the copy genuinely exists, as exemplified, and this is attained by showing the authority of the person certifying, or that he is keeper of the record, his present incumbency of the office, and the genuineness of his signature or seal...."
These same requirements are set forth in the Federal Statute[3] enacted pursuant to mandate of the United States Constitution.[4] The Federal statute provides:
§ 1739. State and Territorial nonjudicial records; full faith and credit
"All nonjudicial records or books kept in any public office of any State, Territory, or Possession of the United States, or copies thereof, shall be proved or admitted in any court or office in any other State, Territory, or Possession by the attestation of the custodian of such records or books, and the seal of his office annexed, if there be a seal, together with a certificate of a judge of a court of record of the county, parish, or district in which such office may be kept, or of the Governor, or secretary of state, the chancellor or keeper of the great seal, of the State, Territory, or Possession that the said attestation is in due form and by the proper officers.
"If the certificate is given by a judge, it shall be further authenticated by the clerk or prothonotary of the court, who shall certify, under his hand and the seal of his office, that such judge is duly commissioned and qualified; or, if given by such Governor, secretary, chancellor, or keeper of the great seal, it shall be under the great seal of the State, Territory, or Possession in which it is made.
"Such records or books, or copies thereof, so authenticated, shall have the same full faith and credit in every court and office within the United States and its Territories and Possessions as they have by law or usage in the courts or offices of the State, Territory, or Possession from which they are taken."
And so we hold that in order to properly authenticate a non-judicial public document of a sister state so as to make said document admissible in the courts of this state, the document should be certified by the keeper of the record as a true copy of the records in his custody; the seal of the keeper's office should be affixed if he has a seal; and then either a judge of a court of record or some state officer with an official seal should vouch for the authority and incumbency of the keeper, the genuineness of his signature and that official should affix his seal to the certificate.
Appellant's fourth point suggests the trial court erred in allowing Ola Mae, over objection, to testify that John Henry never told her that Christopher was his son. While the question posed is cast in the negative the inference suggested is that if *376 John Henry had a son he would surely have told his mother about it. Of course, Ola Mae was interested in the event of the cause and Christopher was a protected person under the Dead Man's Statute. This is not a case in which the evidence was overwhelmingly in favor of the appellee; it was, in fact, a close case. Accordingly, we are unable to say with any degree of certitude that it was harmless error to allow Ola Mae to testify that the deceased never told her Christopher was his son.
Since this case must be tried again, we will mention appellant's complaint about the trial court's admitting a transcript of Dorothy Hinson's testimony taken in the divorce case between Dorothy and John Henry.
Dorothy had testified in this case that John Henry did not leave her in Jersey City until October 1963, after Christopher was born, and that Christopher was John Henry's child. Ola Mae then offered in evidence a transcript of the testimony and the proceedings in the divorce case between Dorothy and John Henry. At that time, in 1969, Dorothy testified that John Henry left her in Jersey City in 1962 and that she had no children. Appellant objected to the admissibility of that evidence upon the basis that the rule in Florida is a mother may not bastardize her child so she is incompetent as a witness to testify that her child is illegitimate. Appellant relied upon Smith v. Wise, 234 So.2d 145 (Fla. 3rd DCA 1970), and Sanders v. Yancey, 122 So.2d 202 (Fla. 2nd DCA 1960), for that position.
However, the rule in Florida that a mother is not permitted to have a child born in wedlock declared to be illegitimate has been changed.
The Florida Supreme Court in Gammon v. Cobb, 335 So.2d 261 (Fla. 1976), held Florida Statute § 742.011, bastardy statute unconstitutional because it denied equal protection to married women who were not permitted to bring a paternity action. While Gammon did not specifically hold that a mother can testify so as to bastardize her child, this exact issue was reached in Williams v. Estate of Long, 338 So.2d 563 (Fla. 1st DCA 1976), wherein the court specifically held that a mother could testify that her child was illegitimate relying on Gammon, supra. In re Estate of Jerrido, 339 So.2d 237 (Fla. 4th DCA 1976).
Therefore, in the case at bar the trial court did not err in allowing into evidence the transcript from the divorce proceedings wherein Dorothy testified that she did not have any children by John Henry, which would, of course, mean Christopher was illegitimate.
Finally, appellant contends it was error not to give four requested instructions. We find no error in this respect because appellant's requested instruction No. 4 was covered by the instruction given by the Court, instructions Nos. 5, 6 and 7, refer to the competency of a mother as a witness to testify to the illegitimacy of her child. As pointed out above, those instructions are no longer a correct statement of the law. Appellant's requested instruction No. 6 additionally advises the jury about the presumption of legitimacy. Generally speaking, the jury is not to be instructed on presumptions. The office of a presumption is to provide a prima facie case. The defendant then has the burden to go forward with the evidence to rebut the fact presumed  if defendant introduces sufficient evidence the presumption "dissipates" and the jury must decide based on all evidence without the aid of a presumption. Gulle v. Boggs, 174 So.2d 26 (Fla. 1965); Shaw v. York, 187 So.2d 397 (Fla. 1st DCA 1966).
In view of the foregoing, we reverse the judgment appealed from and remand the cause for a new trial.
REVERSED AND REMANDED.
CROSS, J., and WEAVER, SIDNEY M., Associate Judge, concur.
NOTES
[1] No relation to John Henry Hinson.
[2] This case was controlled by the Wrongful Death Act in effect in 1971.
[3] 28 U.S.C.A. § 1739.
[4] U.S.Const. art. 4, § 1; art. 1, § 8.