**E. B., et al v. J. M. C.**
No. GCG-77-2325.
Circuit Court, Polk County.
November 9, 1978.

Charles L. Carlton and Geraldyne H. Carlton, both of Lakeland, for the plaintiffs.

Denis L. Fontaine, Lakeland, for the defendant.

CLIFTON M. KELLY, Circuit Judge.

In September, 1977, plaintiffs, E. B. and the Florida Department of Health and Rehabilitative Services, filed a paternity suit alleging that the defendant, J. M. C., was the natural father of two children born to the plaintiff, E. B., to-wit: J. M. C., born July 13, 1968, and D. C. C., born January 23, 1970, and requested the defendant's help in supporting the children. The defendant filed a motion to dismiss the complaint on the ground that the paternity action was barred by the statute of limitations, Section 95.11(3)(b), Florida Statutes. The court took note of the fact that the plaintiff, E. B., was unable to bring an action to establish paternity before 1976, in that she was a married woman, *Gammon v. Cobb*, 335 So.2d 261 (Fla. 1976), but granted defendant's

motion to dismiss in that the action to determine paternity had not commenced within four years of the children's birth.

Plaintiff, E. B., then as representative of her minor children, filed an amended complaint asserting in Count II that the children have a cause of action for support against their natural father, independent of the mother's right to bring a paternity action; that a new cause of action accrues to the children for each successive month's support; and that the children's right to sue for support is not barred by the statute of limitations which might bar the mother's individual right to bring a paternity suit. In Count III of the amended complaint, the Florida Department of Health and Rehabilitative Services alleged that the defendant owes a debt to that agency for public assistance paid by the agency for the minor children.

Defendant then filed an amended motion to dismiss Counts II and III of the amended complaint asserting that no statutory or case law authority exists whereby minor illegitimate children have a cause of action for child support from their alleged natural father.

Assuming as we must in a motion to dismiss that all the allegations of the complaint can be factually proven. *Pizzi v. Central Bank and Trust Company*, 250 So.2d 895, conformed to 251 So.2d 910 (Fla. 1971), the defendant's motion to dismiss plaintiffs' amended complaint is denied for the following reasons —

The laws of this state governing the remedies for the enforcement of support obligations for dependent children by responsible parents have been in a state of flux for the past several years. But the overriding concern of all the statutory laws and case law decisions relating to the support of dependent children has been that the children be provided for, whether the context of the situation be a determination of paternity[1], a dissolution of marriage[2], an action for wrongful death[3], an action by an illegitimate child to receive a share of his deceased natural father's estate[4], or a situation covered under the Florida's Workmen's Compensation Act[5].

While under common law no duty reposed in a putative father to support his child born out of wedlock, *Carpenter v. Sylvester,* 267 So.2d 370 (Fla. 3d D.C.A. 1972), the state of Florida has established the right of an illegitimate child to receive support from

1. Gammon v. Cobb, 335 So.2d 261 (Fla. 1976).
2. Chapter 61, Fla. Stat. (1977).
3. Section 768.18(1), Fla. Stat. (1977).
4. In re Estate of Burris, 361 So.2d 152 (Fla. 1978).
5. Section 440.02(13), Fla. Stat. (1977).

its natural father until the child reaches 18 years of age. §742.041, Florida Statutes.

Until the decision rendered in *Gammon v. Cobb*, supra, only "unmarried" women could institute actions to determine the paternity of illegitimate children. *Gammon* extended the right to sue to "married" women as well, recognizing that the purpose of the statute was to protect the welfare of the child.

> "[T]he purpose of the statute is to (i) protect the interests of a child illegitimately conceived and (ii) to impose an obligation on the natural father to provide support[;] it is the relationship between the natural father and the child which should be controlling rather than the marital status of the mother."
> Id., at 268.

The Supreme Court of Florida in Gammon cited with approval both *Shinall v. Pergerorelis*, 325 So.2d 431 (Fla. 1 D.C.A. 1975), and *Walker v. Walker*, 266 So.2d 385 (Fla. 1 DC.A. 1972), which held that a mother cannot through agreement with the putative father, contract away an illegitimate child's right to support and that any release executed by the mother is invalid to the extent that it affects the rights of the child. Such an agreement was held to be void and against public policy. If a mother is unable then by overt action to contract away the right of child to receive support, then surely she may not by her *inaction* in failing to timely prosecute a paternity suit, divest a child of its right to seek support from its alleged natural father.

The court in *Gammon* further pointed out that the mother is merely a trustee to receive support for the child and to convert it for the benefit of the child and that the real party in interest is the innocent child.

To deny J. M. C. and D. C. C. access to the courts to seek support from their natural father, assuming as we must on a motion to dismiss that they will be able to sustain their burden to prove that J. M. C. is indeed their father, would be both illogical and unjust and would violate Article I, Section 21 of the Florida Constitution.

To reach any other conclusion would only penalize the child, and in this instance, the taxpayers of the state of Florida as well.

In order to sustain their cause of action, plaintiffs must prove that the defendant is the father of the children and that the children are in need of support.

The defendant's motion to dismiss Count III of the amended complaint is granted insofar as it attempts to create a debt owing by the defendant to the Florida Department of Health and Reha-

bilitative Services for public assistance paid on behalf of the children before a judicial determination of paternity has been established.