546 So.2d 6 (1989)
SUNNYVALE MARITIME CO., INC., Appellant,
v.
Elsa Delfina Montoya GOMEZ, As Widow and Personal Representative of Jose Luis Gomez-Duarte, Deceased, Appellee.
No. 87-866.
District Court of Appeal of Florida, Third District.
January 31, 1989.
Rehearing Denied August 4, 1989.
*7 Schreiber, Rodon Alvarez and Gerhart Schreiber, Coral Gables, for appellant.
Brett Rivkind, William Huggett, Miami, for appellee.
Before BARKDULL, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal from a final judgment for the plaintiff in a negligence action brought under the Jones Act. Although the defendant challenges the propriety of the judgment on several grounds, in our view only one merits discussion. We affirm.
The defendant contends that the records of the Prince Lara Hospital, Puerto Cabello, Venezuela (at which the plaintiff's decedent was first cared for and later, after his release and return, died) were not properly authenticated and were therefore erroneously admitted. This lack of proper authentication, says the defendant, arose from the plaintiff's non-compliance with the procedure for self-authentication of foreign documents set out in Section 90.902, Florida Statutes (1987), that is, the failure to show that final certification of the hospital records was made by one of the members of the diplomatic service enumerated in the statute.[1]
In our view, the flaw in the defendant's argument lies in treating self-authentication as the exclusive method of authentication. Self-authentication is, instead, merely a streamlined alternative to the more tedious authentication procedure; while documents must be authenticated to be admitted, they need not be self-authenticated.
Section 90.901, Florida Statutes (1987), provides that the authentication requirement is satisfied by evidence "sufficient to support a finding that the matter in question is what its proponent claims." Since traditional methods of authentication (e.g., testimony or other extrinsic evidence) "may prove troublesome, time consuming, and expensive," McCormick on Evidence § 228, at 699 (3d ed. 1984), Section 90.902 permits evidence to be "self-authenticated" when "the document itself discloses sufficient information to be admitted without further proof of its genuineness." C. Ehrhardt, Florida Evidence § 902.1, at 585 *8 (2d ed. 1984). Accordingly, self-authentication is said to be an "exception" to the general requirement of authentication. 11 J. Moore & H. Bendix, Moore's Federal Practice § 902.02 (2d ed. 1988); C. Ehrhardt, supra § 902.1, at 585. See McCormick on Evidence § 228, at 699-700 (self-authentication is an "escape from authentication requirements").
Federal decisions interpreting Federal Rules of Evidence 901 and 902 (upon which the Florida rules are based) quite clearly hold that self-authentication is only one of several ways to authenticate documents. "The FRE offers generous opportunity to authenticate by presentation of sufficient evidence to support the authenticity of a document. Alternatively, if 902(3) is met the document is self-authenticating." United States v. Perlmuter, 693 F.2d 1290, 1293 (9th Cir.1982) (emphasis added). "Documentary evidence introduced in federal courts must be authenticated under the provisions of Rules 901 or 902 of the Federal Rules of Evidence." Amoco Production Co. v. United States, 619 F.2d 1383, 1391 (10th Cir.1980) (emphasis added). See also First National Bank v. M/V Lightning Power, 851 F.2d 1543, 1548 (5th Cir.1988) (document was "neither self-authenticating nor authenticated by the testimony"); United States v. Rue, 819 F.2d 1488, 1494 (8th Cir.1987) (although document is not self-authenticating, it is admissible under other procedures for authentication); In re Bobby Boggs, Inc., 819 F.2d 574, 580 (5th Cir.1987); Ogden Environmental Services v. City of San Diego, 687 F. Supp. 1436, 1437 n. 1 (S.D.Cal. 1988).
In the present case, the trial court ruled that the medical records were adequately authenticated by (a) the affidavit of the director (custodian) of the medical records of the hospital who testified that the 54 pages of hospital medical records were exact duplicates of the originals of the records which could not be released from the hospital; (b) the testimony of the medical director of the hospital who certified that the records were true and correct copies of the originals; and (c) the testimony of the marine investigator who had travelled to the hospital and obtained true and accurate copies of the original records that were at the hospital. This ruling should stand as there is competent evidence in the record to support it. Bury v. Marietta Dodge, 692 F.2d 1335, 1338 (11th Cir.1982). See United States v. Perlmuter, 693 F.2d 1290, 1292 (9th Cir.1982).
Lastly, we note that the trial judge's admission of the medical records did not conclusively establish their authenticity. The Law Revision Council Note to Section 90.901 points out that the "admission into evidence of a matter merely indicates initial sufficiency for presentation to the trier of fact. Once the matter is in evidence the opposing party is free to challenge its genuineness. The court or the jury may find it to be not genuine." See also M. Graham, Handbook of Florida Evidence § 901.0, at 761 (1987) ("The ultimate decision as to whether a person, document, or item of real or demonstrative evidence is as purported is for the trier of fact."). Thus, the trial court's ruling that authenticity had been shown was necessarily reinforced by the jury's factual finding  implicit in its verdict for the plaintiff  that the documents were authentic. In our view, neither the jury's finding nor the trial court's ruling should be disturbed.
Affirmed.
FERGUSON, J., concurs.
BARKDULL, Judge, dissenting.
I respectfully dissent from the majority opinion authored by Judge Pearson.
In May of 1982, Jose Luis Gomez-Duarte, deceased, was a crew member aboard the cargo vessel "Anadria" when it called at the Port of Puerto Cabello, Venezuela. On Saturday, May 15, 1982, the deceased went on shore leave where he became drunk and engaged in acts with homosexuals that may have been unlawful. This conduct resulted in a foreign object being inserted into his rectum which remained therein when he returned to the ship. The deceased returned to the ship and on Sunday, May 16, 1982, he was not feeling well so he went to the Dr. Adolfo Prince Lara Hospital in Puerto Cabello *9 where he was operated upon. The record does not reveal whether the deceased went to the hospital on his own or whether he was sent there by the ship's captain or another ship's officer.[1] The captain was informed the deceased had a hemorrhage due to an ulcer in the digestive system. On Friday, May 21, 1982, the deceased was released from the hospital and returned to the ship. The deceased still complained of feeling ill and on Sunday, May 23, 1982, the captain, after prior unsuccessful attempts, was able to get the deceased readmitted to the Prince Lara Hospital emergency room. A second operation was performed and the deceased expired at 12:30 pm, Monday, May 24, 1982.
Elsa Delfina Montoya Gomez, as widow and personal representative of the estate of Jose Luis Gomez-Duarte, brought the instant suit against Sunnyvale Maritime Co., Inc., Rodson Shipping, Inc., and Adriana Shipping Co., Ltd. alleging in four counts, Jones Act negligence; unseaworthiness; moragne; and death on the high seas act. Issue was joined and the cause proceeded to a jury trial. Prior to putting on their first witness the plaintiff proffered the medical records of the deceased from the Prince Lara Hospital[2] to which the defense objected, claiming said documents were not properly exemplified copies pursuant to Section 90.902 Florida Statutes (1987). The plaintiff's attempt at proper exemplification of the records consisted of a certification by a Dr. Fahrega the physician director of the Prince Lara Hospital and a Dr. Gonzalez the director of medical records of the hospital. Dr. Gonzalez' statement was notarized in Venezuela by the plaintiff's investigator, a Florida notary.[3] The record further shows that the plaintiff sent a representative to Venezuela the weekend before the trial to obtain these documents and that the defendant did not have an opportunity to review the documents prior to their admission. The objected to medical records show on their face that they were incomplete and that it was legally impossible in Venezuela to obtain photostatic copies of original medical histories without a request by a court of the republic. Based upon these certificates and affidavits the trial court permitted the composite exhibit containing the medical records into evidence. At the conclusion of the plaintiff's case the trail court granted the defendant's motion to dismiss all counts of the complaint with the exception of the Jones Act, negligence count. At the conclusion of the evidence the jury returned its verdict.
Sunnyvale Maritime Co., Inc., has raised several points on appeal, but we need to consider only one to decide this case, the issue of admission into evidence of the composite medical records. Section 90.902 Florida Statutes (1987) Self-Authentication provides in part as follows:
"Extrinic evidence of authenticity as a condition precedent to admissibility is not required for:
.....
(3) An official foreign document, record, or entry that is:
(a) Executed or attested to by a person in his official capacity authorized by the laws of a foreign country to make the execution of attestation; and
(b) Accompanied by a final certification, as provided herein, of the genuineness of the signature and official position of:
1. The executing person; or
2. Any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of *10 genuineness of signature and official position relating to the execution or attestation.
The final certification may be made by a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States or a diplomatic or consular official of the foreign country assigned or accredited to the United States. When the parties receive reasonable opportunity to investigate the authenticity and accuracy of official foreign documents, the court may order that they be treated as presumptively authentic without final certification or permit them in evidence by an attested summary with or without final certification."
There is nothing in this record to show that final certification of the documents herein was made by a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States or a diplomatic or consular official of the foreign country assigned or accredited to the United States as required by Section 90.902, Florida Statutes (1987). Therefore, the documents should not have been admitted into evidence by the trial court. See In re Estate of Crosley, 384 So.2d 274 (Fla. 4th DCA 1980); compare Hinson v. Hinson, 356 So.2d 372 (Fla. 4th DCA 1978).
The majority seems to agree that the complained of records would not meet the public records or self-authentication test for admissibility, but were validly proved up for introduction by testimony as to their validity. There was no testimony, either live or by deposition as to the authenticity of these records. The only attempt to authenticate them was an affidavit purporting to state that they were duplicates.[4] The plaintiff in the trial court moved them into evidence as public documents and the trial court so treated them. They were not public records and therefore I find it was error to admit them into evidence and would reverse the final judgment under review and remand the cause to the trial court for a new trial.
NOTES
[1] Section 90.902, Florida Statutes (1987), provides in pertinent part:

"Extrinsic evidence of authenticity as a condition precedent to admissibility is not required for:
... .
"(3) An official foreign document, record, or entry that is:
"(a) Executed or attested to by a person in his official capacity authorized by the laws of a foreign country to make the execution or attestation; and
"(b) Accompanied by final certification, as provided herein, of the genuineness of the signature and official position of:
"1. The executing person; or
"2. Any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation.
"The final certification may be made by a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States or a diplomatic or consular official of the foreign country assigned or accredited to the United States. When the parties receive reasonable opportunity to investigate the authenticity and accuracy of official foreign documents, the court may order that they be treated as presumptively authentic without final certification or permit them in evidence by an attested summary with or without final certification."
[1] Which fact may be material to a claim for negligent treatment, as well as maintenance and cure. Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943); Barlow v. Pan Atlantic S.S. Corporation, et al., 101 F.2d 697 (2d Cir.1939); The Berwindglen, 88 F.2d 125, 128 (1st Cir.1937).
[2] The parties and the trial court treated these records as official public documents which were admitted pursuant to Section 90.902, Florida Statutes (1987). They have been so treated for purposes of this appeal.
[3] A Florida commission as a notary is only valid in the State of Florida. See Section 117.01(3) Florida Statutes (1987); compare Evans v. Dickenson, 114 F. 284 (5th Cir.1902).
[4] "RE: Jose Luis Duarte

Medical Record #: 08-46-02
My name is (signed by Dr. Jesus Alberto Gonzalez), I am over 21 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:
I am the Director of Medical Records of Hospital "Dr. Adolfo Prince Lara" and as such I am the custodian of the records from the said hospital. Attached hereto are 54 pages of the records from the said hospital. These said 54 pages of records are kept by the said hospital in the regular course of business, and it was the regular course of business in the said hospital for an employee or representative, or a doctor permitted to practice in the said hospital, with personal knowledge of the act, event or condition recorded to make the memorandum or record or to transmit information thereof to be recorded included in such memorandum or record, and the memorandum or record made at or near the time of the act, event or condition recorded or reasonably soon thereafter. The records attached hereto are exact duplicates of the original, and it is a rule of this hospital not to permit the originals to leave the hospital."