378 So.2d 1220 (1979)
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, On Behalf of Lucinda GILLESPIE, Appellant,
v.
Ronald Jerome WEST, Appellee.
No. 53123.
Supreme Court of Florida.
December 20, 1979.
*1221 Joseph W. Howard, Asst. Court Commissioner, Jacksonville, and Joseph R. Boyd, Law Firm of Joseph R. Boyd, Tallahassee, for appellant.
Daniel A. Japour, Jacksonville, for appellee.
Stanley Jay Bartel of Bartel & Shuford, Miami, for Roberto Romero, amicus curiae.

ON REHEARING
ALDERMAN, Justice.
The Department of Health and Rehabilitative Services appeals from a final judgment of the Circuit Court of Duval County upholding the constitutionality of section 95.11(3)(b), Florida Statutes (1975),[1] and *1222 holding that a paternity action against Ronald West was barred by this four-year statute of limitations. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. We find that this statute violates the equal protection clause of the Florida and federal constitutions, and we therefore reverse.[2]
On June 8, 1977, the Department filed a paternity action against Ronald West, alleging that he was the father of Andrea Gillespie, an illegitimate child who was born March 7, 1973. In response, West alleged that he had never paid any support to, for, or on behalf of this child and that the four-year limitation established by section 95.11(3)(b) bars this action. After hearing the evidence, the trial judge found that West is the father of Andrea, that the child was born more than four years prior to the filing of the paternity complaint, and that West has never made any payments of money to the mother for the support of the child. The trial judge entered final judgment for West and dismissed the action with prejudice on the basis that it was barred by the statute of limitations.
An illegitimate child has a right to support from his father. Shinall v. Pergeorelis, 325 So.2d 431 (Fla. 1st DCA 1975). His mother merely serves as a conduit for the support benefits due and owing the illegitimate child, and she cannot contract away the child's right or release the putative father's obligation. Gammon v. Cobb, 335 So.2d 261 (Fla. 1976). An illegitimate's right to obtain support is established by section 742.041, Florida Statutes (1975), and is a continuing right until the child reaches eighteen years of age. This right may be enforced by a paternity suit under section 742.10, Florida Statutes (1975), which is both an action to determine paternity and an action for child support. Estanislao v. State Department of HRS, 368 So.2d 677 (Fla. 1st DCA 1979). Section 95.11(3)(b) imposes a four-year limitation within which an illegitimate's right to paternal support must be asserted, but no such limitation is imposed on the support rights of legitimate children who have a court-enforceable right to support in Florida until they reach eighteen. By enacting this statutory limitation on the time in which paternity actions may be brought, the legislature is treating legitimate children differently from illegitimate children. Because of this statute, the rights of the illegitimate child to support may be foreclosed forever by failure of his mother to file suit through her ignorance, neglect, or sympathy with the father and through no fault of the child.
To evaluate the equal protection challenge directed to section 95.11(3)(b) and to determine what test to apply, we will review the decisions of the Supreme Court of the United States which have developed the test to apply in cases involving classifications based on illegitimacy.
For the first time, in 1968 the Supreme Court applied the equal protection clause on behalf of illegitimate children. Holding that it was a violation of equal protection to deny five illegitimate children the right to maintain an action for their mother's death, the Court, in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), explained:
We start from the premise that illegitimate children are not "nonpersons." They are humans, live, and have their being. They are clearly "persons" within the meaning of the Equal Protection Clause of the Fourteenth Amendment.
While a State has broad power when it comes to making classifications (Ferguson v. Skrupa, 372 U.S. 726, 732, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93), it may not draw a line which constitutes an invidious discrimination against a particular class... . Though the test has been variously *1223 stated, the end result is whether the line drawn is a rational one... .
In applying the Equal Protection Clause to social and economic legislation, we give great latitude to the legislature in making classifications... . However that might be, we have been extremely sensitive when it comes to basic civil rights (Skinner v. Oklahoma, supra, 316 U.S., at 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655; Harper v. Virginia Board of Elections, 383 U.S. 663, 669-670, 86 S.Ct. 1079, 1082-83, 16 L.Ed.2d 169) and have not hesitated to strike down an invidious classification even though it had history and tradition on its side.
391 U.S. at 70-71, 88 S.Ct. at 1510-11. The Court concluded that it was invidious to discriminate against these illegitimate children when no action, conduct, or demeanor of theirs was possibly relevant to the harm done to their mother. In Glona v. American Guarantee and Liability Insurance Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), decided the same day as Levy, the Supreme Court held a wrongful death statute, which authorized actions by mothers of legitimate children but which did not authorize actions by mothers of illegitimate children, unconstitutionally violative of the equal protection clause.
In Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), the Supreme Court held that Louisiana's Workmen's Compensation Law, which denied equal recovery rights to dependent, unacknowledged, illegitimate children, was invalid as denying equal protection of the law because the statutory classification bore no reasonable relationship to any legitimate state interest, compelling or otherwise, and bore no significant relationship to the recognized purposes of recovery that workmen's compensation statutes were designed to serve. The Court explained that in determining the validity of state statutes under the equal protection clause, its inquiry is twofold: "What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?" 406 U.S. at 173, 92 S.Ct. at 1405. Reciting that to visit society's condemnation of irresponsible liaisons beyond the bonds of marriage on the head of the illegitimate infant is unjust and illogical, the Court said:
Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual  as well as an unjust  way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where  as in this case  the classification is justified by no legitimate state interest, compelling or otherwise.
406 U.S. at 175-76, 92 S.Ct. at 1407 (footnote omitted).
The Supreme Court, in Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), considered whether Texas could constitutionally grant legitimate children a judicially enforceable right to support from their natural father and at the same time deny that right to illegitimate children. The mother sought support for her illegitimate child from the natural father but was denied such relief on the ground that under Texas law a natural father has no legal obligation to support an illegitimate child. The Court held that Texas law invidiously discriminated against illegitimate children by denying them substantial benefits accorded children generally and stated:
We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is "illogical and unjust." [Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 175, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).]
*1224 409 U.S. at 538, 93 S.Ct. at 875. Although acknowledging that there are problems relative to proof of paternity which cannot be lightly brushed aside, the Court recognized that these problems cannot be employed as an impenetrable barrier to shield otherwise invidious discrimination. See also New Jersey Welfare Rights Organization v. Cahill, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973).
In Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), the Supreme Court held that a part of the statutory scheme of the Social Security Act violated the equal protection clause because it discriminated against certain illegitimate children. Recognizing that the prevention of spurious claims is a legitimate governmental interest, the Court held that the blanket and conclusive exclusion of a certain class of illegitimates was not reasonably related to the prevention of spurious claims.
The Supreme Court, in Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), held that illegitimacy was not a "suspect" classification so as to require application of a strict scrutiny test in determining a statute's constitutional validity against an equal protection challenge and explained:
[P]erhaps in part because the roots of the discrimination rest in the conduct of the parents rather than the child, and perhaps in part because illegitimacy does not carry an obvious badge, as race or sex do, this discrimination against illegitimates has never approached the severity or pervasiveness of the historic legal and political discrimination against women and Negroes. See Frontiero v. Richardson, 411 U.S. 677, 684-686, 93 S.Ct. 1764, XXXX-XXXX, 36 L.Ed.2d 583 (1973) (plurality opinion).
We therefore adhere to our earlier view, see Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), that the Act's discrimination between individuals on the basis of their legitimacy does not "command extraordinary protection from the majoritarian political process." San Antonio School Dist. v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973), which our most exacting scrutiny would entail... .
427 U.S. at 506, 96 S.Ct. at 2762-63.
Confronted with the question of whether an Illinois statute allowing illegitimate children to inherit by intestate succession only from their mother while allowing legitimate children to inherit by intestate succession from both their mother and their father, the Supreme Court, in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), held that this intestate succession law, which treated illegitimate children differently from legitimate children, was an unconstitutional violation of the equal protection clause of the fourteenth amendment because the statutory differentiation on the basis of illegitimacy was not justified by the promotion of recognized state objectives. In determining what test to apply in determining the constitutional validity of statutes establishing classifications based on illegitimacy, the Court pointed out that the most exacting strict scrutiny test, applicable when state statutory classifications approach fundamental personal rights, was not required. But it went on to say that although classifications based on illegitimacy fall in a "realm of less than strictest scrutiny," this scrutiny is not toothless. It recited that more than a mere incantation of a state purpose was required. Something less than strict scrutiny[3] but more *1225 than minimum scrutiny or rational basis[4] is required. Applying this standard, the Court declared that difficulties of proving paternity do not justify statutory disinheritance of illegitimate children whose fathers die intestate and explained:
The more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally. We think, however, that the Illinois Supreme Court gave inadequate consideration to the relation between § 12 and the State's proper objective of assuring accuracy and efficiency in the disposition of property at death. The court failed to consider the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity. For at least some significant categories of illegitimate children of intestate men, inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles to property passing under intestacy laws. Because it excludes those categories of illegitimate children unnecessarily, § 12 is constitutionally flawed.
.....
The judicial task here is the difficult one of vindicating constitutional rights without interfering unduly with the State's primary responsibility in this area. Our previous decisions demonstrate a sensitivity to "the lurking problems with respect to proof of paternity," Gomez v. Perez, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973), and the need for the States to draw "arbitrary lines ... to facilitate potentially difficult problems of proof," Weber, 406 U.S., at 174, 92 S.Ct. 1400, at 1406. "Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination." Gomez, 409 U.S., at 538, 93 S.Ct. 872.
430 U.S. at 770-71, 97 S.Ct. at 1465-66 (emphasis supplied).
Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), concerned a challenge on equal protection grounds to a New York statute which allowed an illegitimate child to inherit from his intestate father only if a court of competent jurisdiction, during the father's lifetime, has entered an order declaring paternity.[5] Although unable to agree on an opinion, five justices agreed that this statute did not violate the equal protection clause. Justice Powell, joined by Chief Justice Burger and Justice Stewart, found that this classification based on illegitimacy was substantially related to the state's interest. He explained:
Accuracy is enhanced by placing paternity disputes in a judicial forum during the lifetime of the father. As the New York Court of Appeals observed in its first opinion in this case, the "availability [of the putative father] should be a substantial factor contributing to the reliability of the fact-finding process." In re Lalli, *1226 38 N.Y.2d 77, at 82, 378 N.Y.S.2d 351, 355, 340 N.E.2d 721, at 724. In addition, requiring that the order be issued during the father's lifetime permits a man to defend his reputation against "unjust accusations in paternity claims," which was a secondary purpose of § 4-1.2. Commission Report 266.
The administration of an estate will be facilitated, and the possibility of delay and uncertainty minimized, where the entitlement of an illegitimate child to notice and participation is a matter of judicial record before the administration commences. Fraudulent assertions of paternity will be much less likely to succeed, or even to arise where the proof is put before a court of law at a time when the putative father is available to respond, rather than first brought to light when the distribution of the assets of an estate is in the offing.
439 U.S. at 271-72, 99 S.Ct. at 526 (emphasis supplied).
Subsequently, the Supreme Court upheld the constitutionality of a Georgia statute which precluded a father who had not legitimated a child from suing for the wrongful death of the child, while permitting the mother of an illegitimate child or a father who has legitimated the child to sue. Parham v. Hughes, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979). The Court distinguished this case from its previous decisions concerning classifications based on illegitimacy on the basis that the Georgia statute did not impose differing burdens or award different benefits to legitimate and illegitimate children. The Court reasoned that the natural father, who was responsible for conceiving the illegitimate child, had the opportunity to legitimate the child but failed to do so, and it explained:
Legitimation would have removed the stigma of bastardy and allowed the child to inherit from the father in the same manner as if born in lawful wedlock. Ga. Stat.Ann. § 74-103. Unlike the illegitimate child for whom the status of illegitimacy is involuntary and immutable, the appellant here was responsible for fostering an illegitimate child and for failing to change its status. It is thus neither illogical nor unjust for society to express its "condemnation of irresponsible liaisons beyond the bounds of marriage" by not conferring upon a biological father the statutory right to sue for the wrongful death of his illegitimate child. The justifications for judicial sensitivity to the constitutionality of differing legislative treatment of legitimate and illegitimate children are simply absent when a classification affects only the fathers of deceased illegitimate children.
441 U.S. at 352, 353, 99 S.Ct. at 1746-47.
Striking down a New York statute permitting unwed mothers but not unwed fathers to block adoption of a child by withholding consent as violative of the equal protection clause, the Supreme Court, in Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), compared the state's postulated interest in providing adoptive homes to determine whether it justified the discriminatory gender-based classification and concluded that the distinction between classes did not bear a substantial relation to the state's interest.
The decisions of the Supreme Court, although applying seemingly variant tests, have culminated in a definitive test to apply in cases involving an equal protection challenge to an illegitimacy-based classification. This test, although it falls in the "realm of less than strictest scrutiny," requires more than a determination that there is a rational basis for the classification. The classification must also bear a substantial relationship to the state's interest asserted as the basis for the statute.
This Court, in Gammon v. Cobb, 335 So.2d 261 (Fla. 1976), addressing the question of whether the legislature could constitutionally limit actions for determination of paternity and for support of illegitimate children by the natural father to unmarried mothers of illegitimate children, held that such a limitation, which precluded married mothers of illegitimate children from bringing paternity and support actions, denied the illegitimate children equal protection of *1227 the law as guaranteed by the state and federal constitutions. Because the state engaged in numerous classifications outside of chapter 742, Florida Statutes, which permit illegitimates to derive support from their natural father, irrespective of the mother's marital status at the time of conception, this Court decided that to require the mother of an illegitimate child to be legally unmarried at the time of the child's conception in order to bring a suit under section 742.011 was an unreasonable and invidious discrimination against the child.
In In re Estate of Burris, 361 So.2d 152 (Fla. 1978), we held unconstitutional a statute requiring written acknowledgment of paternity by the father of an illegitimate child in order for that child to inherit from the natural father under Florida's laws governing intestate succession. In resolving the question of whether the statute violated the equal protection clauses of our state and federal constitutions, utilizing the test announced in Trimble v. Gordon, we compared the state's interest in enacting this statutory restriction against the constitutional rights of illegitimate children to protection of the laws equal to that afforded other natural but legitimate children. We held that Trimble v. Gordon "requires an analysis of whether the statutory differentiation on the basis of illegitimacy is justified by the promotion of recognized state objectives." 361 So.2d at 155 (emphasis supplied). Comparing the state's interest in avoiding spurious claims and in promoting the orderly descent of property against the harm caused illegitimates by the statute's classification, we decided that no sufficient reason had been asserted to justify the statute's restrictions on an illegitimate's right to inherit intestate property.
Generally, statutes of limitations are enacted to bar stale claims which have been dormant for a number of years but which have not been enforced. Employer's Fire Insurance Co. v. Continental Insurance Co., 326 So.2d 177 (Fla. 1976). The state's objective to avoid stale claims, however, is not valid justification for the discrimination it inflicts on illegitimates since their right to support is a continuing right renewing itself until the child becomes eighteen. An action to determine paternity is not a stale claim when employed as a prerequisite to an illegitimate's obtaining of continuing, recurring support. This right has never become dormant, and for the statute of limitations to act to preclude this right on the basis that it is stale is illogical.
Furthermore, this statute bears at best a tenuous relationship to the interest it seeks to advance of ensuring the availability of adequate proof of paternity. The arbitrary determination that paternity can only be proved in four years creates an impenetrable barrier to an illegitimate child's right to seek support without considering alternatives which deal directly with the problem of proof. Although proof of paternity may become more difficult with the passage of time, this mere possibility cannot be allowed to work an unconstitutional discrimination against illegitimate children. In fact, in the present case, there was sufficient available evidence for the trial court to find that West was Andrea's father.
We also note that competing and conflicting state interests are activated when this statute of limitations is employed to preclude paternity suits. The state wants to avoid stale and fraudulent or spurious claims against a purported father, but it also wants children to be maintained from the resources of their natural parents so that the burden on the public welfare system, and thus the taxpayers, will be lessened. Gammon v. Cobb. Where illegitimate children cannot obtain paternal support, the citizens of this state must pay a significant portion of the cost of raising the child. This conflicts with the recently expressed legislative intent that children be maintained from the resources of responsible parents, thereby relieving, at least in part, the burden presently borne by the general public. Chapter 76-220, codified as section 409.2551, Florida Statutes (1977).
Weighing the state's interest in enacting the statutory limitation of four years against the constitutional rights of the illegitimate *1228 child to the protection of the laws equal to that afforded legitimate children, we hold that this statute amounts to an unconstitutional discrimination against illegitimate children.
The only proper application of the statute of limitations to child support claims would be to those claims that have accrued in the past but which are not adjudicated. The state could properly say that a claim for child support not made within a certain time after it accrued is barred. However, since the duty of support continues throughout the minority of the child, new causes of action are being created each day that the natural father does not provide support. This duty of future support cannot be barred for illegitimate children if it is allowed for legitimate children.
Accordingly, having determined that section 95.11(3)(b) is not substantially or logically related to its asserted goals, we hold section 95.11(3)(b) to be unconstitutional under our state and federal constitutions and reverse the order of the trial court. This cause is remanded for further proceedings consistent herewith.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON and McDONALD, JJ., concur.
SUNDBERG, J., dissents with an opinion.
SUNDBERG, Justice, dissenting.
Because I would adhere to the original opinion filed in this cause I adopt that opinion as my dissent. The opinion is as follows:
The Department of Health and Rehabilitative Services appealed from a final judgment upholding the constitutionality of section 95.11(3)(b), Florida Statutes (1975). We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. We find the statute constitutional.
Section 95.11(3)(b) provides, in pertinent part: "Actions other than for recovery of real property shall be commenced as follows:... (3) WITHIN FOUR YEARS.  ... (b) An action relating to the determination of paternity." Section 95.051(1)(e) provides, "The running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36 is tolled by: ... (e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments."
The department, on behalf of Lucinda Gillespie, filed a paternity suit against West, alleging that he was the father of Andrea Gillespie, who was born March 7, 1973. In response, West alleged that he had never paid any support to, for, or on behalf of the child, and that the four-year statute of limitations established by section 95.11(3)(b) barred the action. After hearing the evidence, the trial judge found that the child was born more than four years prior to the filing of the complaint to determine paternity, that West was the natural father of Andrea, and that since her birth he had bought clothing, shoes, and food for his daughter, but had never made any payment of money to the mother for the support of the child. The trial judge entered final judgment for West and dismissed the action with prejudice on the basis that it was barred by the statute of limitations.
The department filed a motion with the trial court to set aside the judgment or to grant a new trial. The trial court denied the petition for rehearing, held that the term "voluntary payments" as used in section 95.051(1)(e), Florida Statutes (1975), should be given its ordinary meaning, and upheld the constitutionality of section 95.11(3)(b).

I
Initially, we must determine whether the trial court was correct in holding that the term "voluntary payments" is to be given its ordinary meaning. The department argues that the term "voluntary payments" means more than just monetary payments. It contends that the term should be construed to include those items of clothing, food, and shoes which the trial court expressly found had been bought by West for Andrea since her birth.
*1229 We agree with the trial court that the term "voluntary payment" means only the payment of money. A reading of the Florida paternity suit statute indicates that the remedy intended by the legislature was limited to monetary payments for the support of the illegitimate child. All of the language of that chapter is couched in such terms. Section 742.031 provides in pertinent part:
The court shall determine the issues of paternity of the child, and the ability of the parents and each of them to support the child and if the court shall find the defendant to be the father of the child he shall so order and shall further order the defendant to pay the complainant, her guardian or such other person assuming responsibility for the child as the judge may direct, such sum or sums as shall be sufficient to pay reasonable attorney's fees, hospital or medical expenses, cost of confinement and any other expenses incident to the birth of such child. In addition the court shall order the defendant to pay periodically for the support of such child such sums as shall be fixed by the court ... . [Emphasis added.]
We believe the meaning of the term "voluntary payments" in section 95.051(1)(e) can best be determined in view of the legislative remedy envisioned by section 742.031. When a woman brings a paternity action under chapter 742, she seeks a determination of paternity and a court order directing the purported father to make periodic monetary payments for the support of the illegitimate child. If a mother is receiving monetary payments from the purported father for the support of the child, there is no need for her to institute proceedings to establish paternity and to secure a court order directing the periodic payment of money. Why institute proceedings for the same relief she is presently receiving? Because the mother is understandably deterred from instituting suit while she is receiving the very benefits to which she would otherwise be entitled under the statute, the legislature has provided that she should not be disadvantaged by her failure to sue during this time. Accordingly, section 95.051(1)(e) tolls the running of the statute of limitations during the time the mother is receiving voluntary payments from the purported father. The legislature has designed a statutory scheme which matches the action sufficient to toll the limitations period to the remedy provided when the statute is invoked. We conclude that in view of the restrictive monetary remedy in section 742.031, the legislature intended to include only monetary payments under the phrase "voluntary payments" when it enacted the limitations provision of section 95.051(1)(e).

II
We now turn to the constitutionality of section 95.051(1)(e), in the face of an attack alleging that it invidiously discriminates against illegitimates by circumscribing their rights to support in contravention of the state and federal constitutions. The department contends that while a legitimate child has a court-enforceable right to support in Florida until he or she reaches age 18, the illegitimate child only has such a right if the mother brings a paternity suit within the four-year period provided by the statute. The department suggests that this four-year limitation is illogical and unjust. Because of the mother's ignorance, neglect, or sympathy with the father, the child's right to support may be forever lost by her failure to file suit within the four-year period. The department argues that the illegitimate child's right to support is a continuing one which renews itself until age 18. West contends that a classification is not unconstitutionally discriminatory so long as the distinction is based on differences of a practical nature, and that inherent in the authority of the legislature to provide remedies for special situations is the right to establish a reasonable time frame during which these remedies must be sought.
We must first address our decision in Gammon v. Cobb, 335 So.2d 261 (Fla. 1976). In that case, in determining that a married woman had standing to bring an action for paternity and support, we discussed the rights of the illegitimate child. We said:

*1230 An illegitimate child's right to support cannot be contracted away by its mother. A release executed by her is invalid to the extent that it purports to affect the rights of the child. The mother is merely the trustee to receive the funds and simply convert them into relief for the children. The obligation of support is for the benefit of the child. Being only a conduit, she has no right to control benefits due and owing to the child by its natural father by fixing her marital status.
Id. at 266-67 (citations omitted) (emphasis added). The department argues that if the obligation of support is for the benefit of the child, then it is unconstitutional to allow the mother by her inaction to terminate forever the child's right to support. This, the argument continues, invidiously and unreasonably discriminates against illegitimate children by permitting their rights of support to be cut off after four years, in the face of a system which safeguards the support of their legitimate counterparts to the time of their majority. Inherent in this equal protection challenge, then, is the notion that any statute of limitations would be unconstitutional which discontinues the child's right to support prior to that child's eighteenth birthday.
Neither this court nor the Supreme Court of the United States has directly considered the constitutionality of a statute of limitations when applied to paternity suits.[*]Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), is the Supreme Court's most recent pronouncement on the rights and status of illegitimate children. In Trimble, an Illinois classification allowing illegitimate children to inherit by intestate succession only from their mothers was held violative of the equal protection clause of the fourteenth amendment because the disparity in treatment could not be justified on the basis of any legitimate state interest. Although the Court recognized that the "latitude given state economic and social regulation is necessarily broad," it reiterated its previous declarations that legitimacy distinctions will not be sustained unless the particular statutory classification bears "some rational relationship to a legitimate state purpose." Id. at 766-67, 97 S.Ct. at 1463. In Trimble, the classification preventing illegitimate children from sharing in the intestate distribution of their natural fathers' estates was not reasonably related to the legitimate state interests in encouraging family relationships and in establishing an accurate and efficient method of disposing of property at death.
We do not find such a tenuous relationship between classification and state interest in the legislative enactment before us. The paternity limitations statute is designed to foster the state's reasonable concern for discouraging fraudulent claims and for promoting the fair administration of justice by ensuring that law suits will be instituted while proof is still available and memories are still fresh. The United States Supreme Court in Trimble recognized that the availability of proof is a reasonable factor to be weighed in testing the constitutionality of statutes making legitimacy distinctions. The Court noted:
Evidence of paternity may take a variety of forms, some creating more significant problems of inaccuracy and inefficiency than others. The States, of course, are free to recognize these differences in fashioning their requirements of proof.
Id. at 772, n. 14, 97 S.Ct. at 1466 n. 14.
By fashioning a statutory limitations provision which is designed to shield men from *1231 claims entered decades after the alleged conduct in an area fraught with fraud and ill will, the legislature was properly exercising its power to make reasonable distinctions for the promotion of legitimate legislative aims. It is not our function to test the wisdom of the challenged legislation. Our job is to discern whether legitimate legislative purposes exist, and then to ask whether the challenged classifications bear some reasonable relation to the purposes. Because the state has a legitimate interest in having paternity claims settled as early as possible after the event in question, we uphold the statute against both state and federal equal protection challenges.
We realize that the question is close and that by our decision we may be charged with visiting the failures of the mother on the child. We presume no such authority. By our holding, we simply recognize the legislature's prerogative to fashion legitimacy classifications tailored to meet reasonable legislative goals.
We hold that the phrase "voluntary payments" means payments in money and that section 95.11(3)(b) is constitutional.
Accordingly, the final judgment of the circuit court is affirmed.
NOTES
[1] Section 95.11(3)(b), Florida Statutes (1975), provides in pertinent part:

Actions other than for recovery of real property shall be commenced as follows:
.....
(3) WITHIN FOUR YEARS. 
.....
(b) An action relating to the determination of paternity.
[2] Another issue presented to the trial court concerned whether "voluntary payments," as utilized in section 95.051(1)(e), include forms of support other than monetary payment. We do not reach this issue in light of our holding that section 95.11(3)(b) is unconstitutional.
[3] The strict scrutiny test is employed in evaluating equal protection challenges where the classification is highly suspect, where a discriminatory classification threatens a fundamental constitutional right or involves a suspect class such as race or alienage. See Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1953). This test requires a demonstration that the statute promotes a compelling governmental interest in order to save the classification. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Tribe, in his treatise American Constitutional Law, describes this standard for judicial review of strict scrutiny as being strict in theory and generally fatal in application. He states that there are very few cases where the court has strictly scrutinized and upheld instances of impaired fundamental rights.
[4] McDonald v. Board of Election, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969), gives a succinct explanation of what the rational basis or minimum scrutiny test, employed to examine economic or social legislation challenged on equal protection grounds, is:

The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally even if source materials normally resorted to for ascertaining their grounds for action are otherwise silent, and their statutory classifications can be conceived to justify them... .
394 U.S. at 809, 89 S.Ct. at 1408. See also United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1937).
[5] In Florida, by statutory law, an illegitimate child can inherit from his father even if paternity is not proved until after the father's death. Section 732.108(2)(b), Florida Statutes (1977).
[*] There have been a number of Supreme Court cases ruling on other legal disabilities affecting illegitimate children: Jimenez v. Wemberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974)  entitlement to disability insurance benefits under Social Security Act, New Jersey Welfare Rights Organization v. Cahill, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973)  right to equal participation in welfare program; Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972)  illegitimate's right to recover compensation awards upon death of father; Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)  unwed father's right to custody of illegitimate children upon death of their mother; Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968)  right of illegitimate child to sue for wrongful death of mother.