361 So.2d 152 (1978)
In re the ESTATE OF Daymon C. BURRIS, Deceased.
No. 52330.
Supreme Court of Florida.
July 20, 1978.
*153 W.K. Lally, Jacksonville, for appellant.
Wayne D. Clance, Jacksonville, for appellees.
HATCHETT, Justice.
This case involves the constitutionality of former Section 731.29(1), Florida Statutes (1973),[1] which required a written acknowledgement of paternity by the father of an illegitimate child in order for that illegitimate child to inherit from the natural father under our state laws governing intestate succession. We have jurisdiction to review this case pursuant to Article V, Section 3(b)(1), Florida Constitution (1968), based upon the trial court's express determination *154 that this statute is unconstitutional. We affirm the decision below, and hold that the deceased's illegitimate children are entitled to share equally in the intestate's estate with the other natural but legitimate children.
Burris died without a will on May 9, 1975. The Florida Statutes in effect at that time allowed an illegitimate child to be an heir of his father, for purposes of interstate succession, only if the father had acknowledged his paternity in writing, and signed such acknowledgement in the presence of a competent witness. In spite of these statutory restrictions, the illegitimate claimants in this case contended that they should receive shares of the decedent's estate even though their paternity had not been acknowledged in writing. The trial court held a full factual inquiry and determined that claimants were, in fact, natural children of the decedent. In addition, the trial court held that Section 731.29(1), Florida Statutes (1973) was unconstitutional, in violation of the equal protection clauses of the state and federal constitutions. Therefore, the trial court concluded that the four illegitimate children should share equally in the estate with the three legitimate children of the deceased.
In Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the United States Supreme Court reviewed and held unconstitutional an Illinois statute which allowed illegitimate children to inherit by intestate succession only from their mother, while permitting legitimate children to inherit by intestate succession from both their mothers and their fathers. In Trimble, the claimant's mother had previously won a paternity suit against the child's natural father, and had been awarded support payments. Subsequently, the putative father openly acknowledged his paternity. However, upon the father's death, the state courts refused to allow the illegitimate child to inherit from her father's estate. The Illinois statute, which is similar in many respects to the statute here under review, was held to be unconstitutional by the United States Supreme Court because it violated the equal protection clause of the Fourteenth Amendment.[2]
In recent years, Florida courts have decided numerous cases involving the legal relationship between the illegitimate child and his parents. Gammon v. Cobb, 335 So.2d 261 (Fla. 1976); Wilcox v. Jones, 346 So.2d 1037 (Fla. 4th DCA 1977); Williams v. Estate of Long, 338 So.2d 563 (Fla. 1st DCA 1976). These cases have generally recognized the principle of constitutional law which precludes a state from enforcing legislative or judicial policies which would unreasonably deprive a person of equal protection of the laws. In Wilcox, the district court construed the wrongful death statute to allow the father of an illegitimate child to maintain an action for recovery of damages for the wrongful death of his illegitimate child. In that case, the court stated:
To recognize the right of the natural mother of an illegitimate child to maintain a wrongful death action but in the same breath to refuse to recognize the corresponding right of the natural father, would violate the equal protection clauses of the state and federal constitutions. Wilcox, 346 So.2d at 1038.
If it is a violation of the equal protection clauses of our state and federal constitutions to deny to a natural father his right to bring an action for the wrongful death of his illegitimate child, can it be constitutional to deny an illegitimate child the right to inherit from his natural father? To resolve this issue, we must compare the state's interest, in enacting such a statutory restriction on the method of proof of paternity for inheritance purposes, against the constitutional rights of illegitimate children to protection *155 of the laws equal to that afforded to other natural but legitimate children. The test, as expressed by the United States Supreme Court in Trimble, requires an analysis of whether the statutory differentiation on the basis of illegitimacy is justified by the promotion of recognized state objectives.
Clearly, the state has an interest in the orderly descent of property of its citizens. The determination of paternity is far more difficult than determination of maternity. Therefore, in order to foreclose spurious claims, the state may be justified in imposing a higher degree of proof for paternity than is necessary when a determination of maternity is involved. However, the statute here under attack does not address the "standard of proof," but merely sets forth the kind of evidence required to prove the fact of paternity, to the exclusion of all other kinds of evidence. Even proof beyond a reasonable doubt would be insufficient unless the illegitimate child introduced evidence of a written acknowledgement, signed by the natural father in the presence of a competent witness. The court in Trimble recognized the difficult problems involved in the proof of paternity, but concluded that they cannot be made into an "impenetrable barrier that works to shield invidious discrimination."[3]
In response to the arguments that the statutory scheme under attack did not present an insurmountable bar to the inheritance of property by an illegitimate child, because of the availability of alternative methods of inheritance, the Supreme Court in Trimble answered that:
By focusing on the steps that an intestate might have taken to insure some inheritance for his illegitimate children, the analysis loses sight of the essential question: constitutionality of discrimination against illegitimates in a state intestate succession law. If the decedent had written a will devising property to his illegitimate child, the case no longer would involve intestate succession law at all. Similarly, if the decedent had legitimated the child by marrying the child's mother or by complying with the requirements of some other method of legitimation, the case no longer would involve discrimination against illegitimates. Trimble, 430 U.S. at 774, 97 S.Ct. at 1467.
Statutes, such as the one here under review, constitute a reflection of traditional moral and social values disapproving extra marital sexual relations. The fundamental unfairness of legal attempts to enforce these social and moral values by stigmatizing illegitimate children was recognized by the United States Supreme Court in Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768 (1972), where the court stated:
The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual  as well as an unjust  way of deterring the parent. (footnote omitted)
Since no sufficient reason has been asserted to justify these former restrictions on an illegitimate's right to inherit intestate property, we hold former Section 731.29(1), Florida Statutes (1973) to be unconstitutional under our state and federal constitutions. We note that this statute has been amended by the Legislature to allow an illegitimate child to take an intestate share if the paternity of the child is adjudicated, either before or after the death of the father.[4] This new statutory *156 modification, Section 732.108, Florida Statutes (1977), did not take effect until January 1, 1976, and is therefore inapplicable to this case.[5]
The evidence presented below was sufficient to support the trial judge's determination that claimants were the natural children of the decedent. We also agree with the trial court's conclusion that this finding entitles them to take equal shares in the decedent's estate with all his other natural children. The judgment below is affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON, SUNDBERG and ALDERMAN, JJ., concur.
BOYD, J., dissents.
NOTES
[1] Section 731.29(1), Fla. Stat. (1973) provided:

Illegitimate child as heir. 
(1) Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father. Such illegitimate child shall inherit from his mother and also, when so recognized, from his father, in the same manner as if the child had been born in lawful wedlock. However, such illegitimate child does not represent his father or mother by inheriting any part of the estate of the parents' kindred, either lineal or collateral, unless his parents have intermarried, in which event such illegitimate child shall be deemed legitimate for all purposes.
The trial court's order mistakenly cited Sec. 371.29(1) as the applicable, unconstitutional provision. However, it is clear that this was merely a typographical error.
[2] Illinois Rev.Stat., Chapter 3, Sec. 12 (1961), stated:

An illegitimate child is heir of its mother and of any maternal ancestor, and of any person from whom its mother might have inherited, if living; and the lawful issue of an illegitimate person shall represent such person and take, by descent, any estate which the parent would have taken, if living. An illegitimate child whose parents inter-marry and who is acknowledged by the father as the father's child shall be considered legitimate.
[3] Trimble, supra, 430 U.S. at 771, 97 S.Ct. at 1466, citing Gomez v. Perez, 409 U.S. 535, 538, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973).
[4] Section 732.108(2), Fla. Stat. (1977) states:

For the purpose of intestate succession in cases not covered by subsection (1), a person born out of wedlock is a lineal descendant of his mother and is one of the natural kindred of all members of the mother's family. The person is also a lineal descendant of his father and is one of the natural kindred of all members of the father's family, if:
(a) The natural parents participated in a marriage ceremony before or after the birth of the person born out of wedlock, even though the attempted marriage is void.
(b) The paternity of the father is established by an adjudication before or after the death of the father.
(c) The paternity of the father is acknowledged in writing by the father.
See also, Chapters 74-106; 75-220; 77-87, Laws of Florida. This modification is in substantial conformity with the Uniform Probate Code model statute, Uniform Laws Annotated, Vol. 8, p. 328, West Publishing Co. (1972).
[5] The new Probate Code clearly states in Sec. 731.011, Fla. Stat. (1977) it is inapplicable to determine the substantive rights of persons that have vested prior to this effective date. Further Sec. 732.101, Fla. Stat. (1977) states that for the purposes of intestate succession, "the decedent's death is the event that vests the heir's right to intestate property." See also, former Sec. 731.21, Fla. Stat. (1973). Since Burris died on May 9, 1975, his childrens' right to his property vested on that date. We disagree with the conclusion of the district court in Tenopir v. Boles Estate, 342 So.2d 130 (Fla. 1st DCA 1977), which held that the date of the probate court's determination of paternity, rather than the date of death, is decisive as to whether the present or former probate code provisions are applicable to the controversy.