397 So.2d 420 (1981)
In re the ESTATE OF Lawrence Edward ODOM, Deceased.
Donna D. BERKEY, Appellant,
v.
ESTATE of Lawrence Edward ODOM, Deceased, Appellee.
No. 80-1235.
District Court of Appeal of Florida, Second District.
April 24, 1981.
*421 Michael K. Stuckey and Richard Motley, Clearwater, for appellant.
William H. Walker, St. Petersburg, for appellee.
CAMPBELL, Judge.
Pursuant to section 732.108(2)(b), Florida Statutes (1979), appellant Donna D. Berkey, as mother, guardian and next friend of Julie Diane Odom, a minor child, filed in the circuit court, probate division, a petition for appointment of personal representative, determination of beneficiaries, administration of intestate estate and adjudication of paternity in regard to the estate of Lawrence Edward Odom, deceased. Her petition alleged that Mr. Odom had previously died intestate and that no application for appointment of a personal representative had been filed. She further alleged that Mr. Odom was survived by his wife, two adult children of that marriage, one adult child of a previous marriage, and a minor child, Julie Diane Odom, who was alleged to have been born out of wedlock to Mr. Odom and appellant on November 5, 1969. Appellant, prior to the death of Mr. Odom on January 22, 1980, had filed an action against him for determination of paternity pursuant to chapter 742, Florida Statutes. That action had been dismissed by the trial court on its own motion on February 15, 1980, as a result of Mr. Odom's intervening death.
Anselaine D. Odom, as surviving spouse of Mr. Odom, filed a motion to dismiss *422 appellant's probate petition asserting that it was an action for determination of paternity brought against the estate of the putative father and, therefore, could not survive his death under the authority of Bell v. Setzer, 375 So.2d 61 (Fla.2d DCA 1979). The trial court agreed and dismissed appellant's petition specifically relying upon Bell v. Setzer, supra, as controlling over the arguments of appellant that In re Estate of Burris, 361 So.2d 152 (Fla. 1978), and section 732.108(2)(b), Florida Statutes, authorize such an action. We find the trial court's reliance misplaced and reverse.
Bell v. Setzer, supra, was an appeal from the dismissal of an action for the determination of paternity and support of a minor child born out of wedlock. The trial court there dismissed the action upon the death of the putative father prior to an adjudication of paternity. This court in Bell properly held the dismissal was proper because an action pursuant to chapter 742 abates on the death of the defendant putative father, citing as authority Carpenter v. Sylvester, 267 So.2d 370 (Fla.3d DCA 1972). Carpenter involved an appeal from an order denying a motion to dismiss an action for determination of paternity and child support under chapter 742, Florida Statutes, brought after the putative father's death against the administratrix of his estate. The district court of appeal in Carpenter reversed, properly holding that since under the common law the duty of support of minor children dies with the father, so does an action under chapter 742 likewise abate with the death of the putative father since the statute contains no language in derogation of the common law rule. Although this court in Bell discusses the possibilities of an action under section 732.108(2)(b) for the determination of paternity for inheritance purposes, that issue was not before the Bell court. Bell like Carpenter was an action for the determination of paternity for the purpose of child support pursuant to chapter 742.
Appellant's petition below did not involve chapter 742 or child support, but involved solely the determination of paternity for the purpose of inheritance under section 732.108(2)(b), a different action entirely.
In sustaining appellant's petition below, we look to a number of decisions of the Florida courts that have interpreted section 732.108(2)(b) and chapter 742, Florida Statutes, as well as decisions in other jurisdictions that have considered similar statutes. As this court in Bell pointed out, clearly the legislature by enacting section 732.108(2)(b) intended to allow an action to determine paternity for inheritance purposes. See also State Department of HRS v. West, 378 So.2d 1220 (Fla. 1979). Again as pointed out in Bell, the problem arises when chapter 742 is sought to be used as the vehicle for such an action. Carpenter and Bell both hold that a chapter 742 action abates on death. Section 742.10 provides that chapter 742 is "in lieu of" all other proceedings provided by law for the determination of paternity and support of children born out of wedlock. Chapter 742 then is not available as the vehicle for a cause of action for determination of paternity for inheritance purposes. The question then is, does a cause of action still exist in light of the "in lieu of" language of section 742.10? We hold it does, construing that language to be restrictive only to actions for child support for children born out of wedlock. Since we determine that the legislature clearly intended that an action could be maintained for the determination of paternity for inheritance purposes, we must also determine the proper method for bringing such an action.
One of equity's most important maxims is that "equity will not suffer a wrong to be without a remedy." First State Bank of Clermont v. Fitch, 105 Fla. 435, 443, 141 So. 299, 301 (1932). Since the legislature has determined that children born out of wedlock have a right to inherit from their natural father if paternity is established before or after the father's death but has not specified the type of actions to secure that right, we must assume the legislature intended a remedy that already existed. In re Estate of Burris, supra, is helpful in *423 concluding that appellant has sought the correct remedy. There the court examined section 731.29(1), Florida Statutes (1973), the predecessor to section 732.108(2). In doing so, it held section 731.29(1), Florida Statutes (1973), to be unconstitutional under our state and federal constitutions in that it restricted an illegitimate child's right to inherit intestate property of its natural father's estate only if paternity was proved by a written and witnessed acknowledgement of paternity by the father. The court there noted that the legislature had subsequently amended the provision by enacting section 732.108(2), where, in addition to written acknowledgement, an illegitimate child would be allowed to inherit from its father if paternity was adjudicated either before or after death. Since the prior statute allowed paternity for inheritance purposes to be established after the death of the father in an action against the putative father's estate only with proof of an acknowledgement in writing, the amended section 732.108(2) must be construed as expanding the method of proof of paternity based on evidence other than a written acknowledgement.
Kendrick v. Everheart, 390 So.2d 53 (Fla. 1980), involved the question of whether a father had a right to bring an action under either chapter 742 or chapter 86, Florida Statutes, to determine his paternity of his illegitimate children. The court there held that chapter 742 was intended as the natural mother's exclusive legal remedy in establishing paternity and enforcing support rights on behalf of her child. We feel that the exclusiveness of chapter 742 as the natural mother's remedy is limited, under a strict reading of the wording of the statute, to an action brought for "the determination of paternity and support of children born out of wedlock." § 742.10, Fla. Stat. (1979) (emphasis added). The Kendrick court seemed to agree, holding that the exclusiveness of the remedy provided for the natural mother by the "in lieu of" language of section 742.10 was "limited in application to suits brought by a mother to enforce her child's support rights against the natural father." Kendrick v. Everheart, 390 So.2d at 58 (emphasis added). The court then held that since the "in lieu of" language was thus limited, it did not bar a father's right to bring an action for declaratory judgment of paternity pursuant to chapter 86. See also In re Estate of Donoyan, 393 So.2d 615 (Fla.1st DCA 1981). Here chapter 86 is not readily available. Since the putative father is deceased, any such action would of necessity be against the estate of the deceased and there is no probate estate pending.
So in such a case where does appellant turn? It is clear to us that her petition below was a proper action. Section 733.105, Florida Statutes (1979), is a provision for, among other things, determination of beneficiaries when property passes by intestate succession. Section 733.105(3) seems to perfectly mesh with section 732.108(2)(b), both being a part of the Florida Probate Code. We feel it helpful to set out here the applicable provisions of those sections to see how clearly they interrelate.
Section 732.108(2), Florida Statutes (1979):
For the purpose of intestate succession in cases not covered by subsection (1), a person born out of wedlock is a lineal descendant of his mother and is one of the natural kindred of all members of the mother's family. The person is also a lineal descendant of his father and is one of the natural kindred of all members of the father's family, if:
... .
(b) The paternity of the father is established by an adjudication before or after the death of the father.
Section 733.105(3), Florida Statutes (1979):
When it is necessary to determine who are or were the heirs or devisees, the court may make a determination, on the petition of any interested person, in like proceedings and after formal notice, irrespective of whether the estate of the deceased person is administered or, if administered, whether the administration of the estate has been closed or the personal representative discharged. A separate *424 civil action may be brought under this subsection when an estate is not being administered.
In re Estate of Raso, 332 So.2d 78 (Fla. 4th DCA 1976), seems to recognize the availability of section 733.105 for the purpose of determining the heirship of an illegitimate child. There the decedent's wife as personal representative petitioned for determination of heirs, listing an illegitimate child as a possible heir of the decedent. The petition was served on the child's mother who did not timely respond. Default judgment was entered and the natural mother of the illegitimate child moved to vacate the default on the grounds of excusable neglect. The trial court denied the motion to vacate and the district court reversed, holding, among other things, that the appellant alleged a meritorious defense  that decedent was the father of her child.
Section 732.108 is similar to and apparently patterned after section 2-109 of the Uniform Probate Code.[1] When a statute has its origins in a uniform law it should receive uniform interpretation in all adopting states if the beneficial purpose of uniformity is to be served. Valentine v. Hayes, 102 Fla. 157, 135 So. 538 (1931). In C.L.W. v. M.J., 254 N.W.2d 446 (N.D. 1977), the North Dakota Supreme Court analyzed its statute allowing inheritance from a father by an illegitimate child. North Dakota had adopted the Uniform Probate Code. The facts before the North Dakota court were amazingly similar to those here. There the child was born seven years prior to the father's death. No written admission of paternity was ever made by the father and no judicial proceedings to determine paternity had commenced during his lifetime. At issue before the court was the question of whether North Dakota's determination of paternity statute (similar to Florida's chapter 742) applied only to proceedings to enforce the father's obligation of support of the child during the father's lifetime or whether failure to pursue that right during his lifetime or within the period of the applicable statute of limitation also bars the determination of parentage for inheritance purposes after the father's death. The North Dakota court determined that its statute which corresponds to section 2-109 of the Uniform Probate Code permits either a separate action or a determination in the probate court by or on behalf of a child born out of wedlock after the father's death to determine rights of inheritance. The court in making its findings specifically held that the mother's right to bring an action during the father's lifetime to obtain a determination of paternity and support is a separate and distinct remedy from an action to determine paternity for the right to inherit. As the court said, "The two are separate remedies for separate purposes." C.L.W. v. M.J., 254 N.W.2d at 450.
One of the problems certain to be encountered in an action against the father's estate after his death is the evidentiary problem. As the authors of the annotations at 58 A.L.R.3d 188, 191 n. 9, point out, "the charge of paternity is an easy one to make and a difficult one to refute, especially after the father's death." What then is the standard of proof that should be required in such an action? As we have previously *425 indicated, the Florida statute is patterned after and similar to section 2-109 of Uniform Probate Code. The Florida statute, however, after providing that paternity may be established before or after the death of the father, omits the remaining wording of the Uniform Probate Code. The omitted wording provides that in an action after the death of the father, proof of paternity shall be "clear and convincing."
Initially, therefore, we would seem bound by the maxim that the courts cannot supply by judicial decree what the legislature has omitted. Florida Department of Commerce v. Todd, 353 So.2d 662 (Fla.2d DCA 1978). Here, however, we have precedent which we believe supplies the standard of proof necessary in actions brought to establish paternity after the death of the father. In re McCollum's Estate, 88 So.2d 537 (Fla. 1956), considered an action by an illegitimate son to establish his right to inherit from his father's estate under section 731.29, Florida Statutes (1955), the predecessor to section 732.108. At that time, proof of paternity after death could be established only by the father's written acknowledgment signed in the presence of a competent witness. The probate court, affirmed on appeal by the circuit court, found the illegitimate son entitled to share in his father's estate on the basis of oral testimony concerning a letter purportedly written by the father to the son acknowledging parenthood. The letter was not introduced in evidence as it had been previously destroyed sometime after its receipt. The supreme court held "that the fact of written acknowledgment of paternity may be established by secondary evidence under the general rules relating to the admissibility of secondary evidence of lost or destroyed writings." In re McCollum's Estate, 88 So.2d at 539. However, the supreme court reversed the lower court on the question of the standard of proof necessary in such a case, saying:
And where the writing relied upon is not introduced in evidence but is sought to be proved by secondary evidence, we think the evidence should be of the same character; it should be so clear, strong and unequivocal as to remove every reasonable doubt as to the existence of the writing relied upon, its contents, and its signing in the presence of a competent witness. This is the rule applicable to the establishment of constructive trusts by parol evidence, Lightfoot v. Rogers, Fla., 54 So.2d 237, and we think it is the rule that should be applied in the situation here.
Id. at 540.
Section 732.108(2) now provides for adjudication of paternity after the father's death by evidence of an acknowledgement of paternity in writing by the father or by any other admissible evidence. It would seem then that the standard of proof for the other evidence for adjudication after death should at least meet the standard for the proof of secondary evidence of a lost writing as required by the court in In re McCollum's Estate, supra.
We, therefore, reverse and remand to the lower court for treatment consistent herewith. In doing so, we are not unmindful of the fact that though appellant had petitioned to be appointed personal representative of the estate of Mr. Odom, section 733.301, Florida Statutes may preclude her if the court determines that appointment of a personal representative is required.
BOARDMAN, Acting C.J., and GRIMES, J., concur.
NOTES
[1] Section 2-109, Uniform Probate Code.

If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person,
(1) an adopted person is the child of an adopting parent and not of the natural parents except that adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and that natural parent.
(2) In cases not covered by (1), a person born out of wedlock is a child of the mother. That person is also a child of the father, if:
(i) the natural parents participated in a marriage ceremony before or after the birth of the child, even though the attempted marriage is void; or
(ii) the paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof, except that the paternity established under this subparagraph (ii) is ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as his, and has not refused to support the child.