**In the Matter of the Estate of Arlyn L. ERBE, Deceased.**

**No. 16775.**

Supreme Court of South Dakota.

Argued March 20, 1990.

Decided June 27, 1990.

Vicki L. Tucek, Rice & Ewinger Law Firm, Aberdeen, for appellant.

Jack R. Von Wald, Selby, for appellees and co-executrixes, Eunice Mueller and Audrey Rabenberg Parent.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

This case involves a claim of inheritance brought by Terry Wayne Lassle (Lassle), against the estate of the decedent, Arlyn L. Erbe (Erbe), who died testate on December 14, 1987. His will nominated and appointed Audrey Rabenberg Parent (Parent) and Eunice Mueller (Mueller), the decedent's sisters, as co-executrixes of the will.

On September 19, 1988, a petition was filed by Lassle stating that he was the sole child of the decedent and that the will admitted to probate did not make any provisions for him. Four months later, Lassle filed a Declaratory Judgment action seeking determination of heirship and a Motion requesting that the co-executrixes be restrained from closing and distributing any assets in the estate until determination of heirship was first made by the court.

After the restraining motion was served, the co-executrixes made a motion to Quash and Terminate the Documents filed by Lassle in September 1988. The co-executrixes also requested Lassle's Motion for a Restraining Order be denied.

On February 1, 1989, Lassle filed a response to the co-executrixes' Motion to Quash and Terminate. A hearing was held regarding the numerous motions on March 21, 1989. On that day, the judge rendered a Memorandum Decision stating that the requirements of SDCL 29-1-15 or SDCL 25-6-1 must be met by Lassle, otherwise he has no legally protectable interest and no standing to bring a declaratory judgment action. The court set a date for a hearing, in regards to proving heirship under SDCL 29-1-15.

On May 18, 1989, a hearing was held to dispose of all the pending motions. (Lassle also filed a Motion for Blood Tests and Notice Hearing). At this hearing, the court found that SDCL 29-1-15 had not been complied with by Lassle. The trial court further granted the co-executrixes' Motion to Quash and Terminate the Petition and Objections of Will to Probate. Lassle was served with the trial court's order denying all of his motions.

On appeal Lassle presents six issues:

(1) Is the application of SDCL 29-1-15 unconstitutional and does it deny an illegitimate child equal protection when he asserts a claim for inheritance in testate proceedings?

(2) Must an illegitimate child meet the requirements of SDCL 29-1-15 before he may assert a claim for inheritance as a pretermitted heir under SDCL 29-6-10 when his father dies testate?

(3) Is an illegitimate child precluded from bringing a declaratory action to prove heirship after his father dies testate?

(4) May blood tests be ordered to establish heirship by an illegitimate child?

(5) May an estate and its executrixes be restrained from filing a final account, decree and distribution until heirship is proved by an illegitimate child?

(6) Were Lassle's instruments properly quashed and terminated based on a strict construction of SDCL 29-1-15?

–Holding–

We affirm the trial court's holding that Lassle is not a legal heir of Erbe's estate. It is unnecessary to address issues 3 through 6, based upon our decision.

FACTS

Erbe died testate on December 14, 1987, in Bowdle, South Dakota. He left two living sisters, Parent and Mueller, according to the terms of his will to share in his estate equally.

Approximately 32 years before his death, Erbe allegedly had a liaison with Hilda Lassle (Hilda). Hilda had come to the Erbe farm to work in about 1946 or 1947 and left after becoming pregnant in June of 1956.

Hilda Lassle gave birth to a son, Terry Wayne Lassle, on June 20, 1956. Hilda apparently told members of Erbe's family that Erbe was Terry's father. Erbe never admitted to Hilda that he was Terry's father.

After Hilda was discharged from the hospital, Earl Erbe (Earl), Arlyn Erbe's father, made arrangements for Hilda and her baby to stay with Parent, Arlyn Erbe's sister. Parent arranged for blood tests to be performed but the results of such tests are unknown at this time. Parent also arranged for the child's baptism and she and her husband were the child's sponsors. Hilda stayed at Parent's farm for two to three months at which time Earl moved Hilda and her son to another residence, the Senns. After three to four months, Hilda and the baby moved to Bismarck, North Dakota with her sister.

In the summer of 1987, Hilda informed her son that Erbe was his father. There was never any discussions regarding his parentage prior to that time. Lassle's only meeting with Erbe occurred at a hospital in August of 1987, four months before Erbe died.

## DECISION

I. *As applied to the facts in this case, SDCL 29–1–15 is not unconstitutional.*

■ The rights of illegitimate children and statutory classifications which tend to limit those rights have undergone close examination by the courts of this nation in recent years. It is well-settled law that classifications based on illegitimacy, while not being subject to "strict scrutiny," must be substantially related to permissible state interests. *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). These statutes, which tend to differentiate between illegitimate and legitimate children, must bear some rational relationship to legitimate state purposes. As applied to inheritance statutes, the Supreme Court has recognized that the State may apply "a more demanding standard" for illegitimate children who seek to inherit from their father's estate in order to promote the efficient administration of a decedent's estate and to avoid spurious claims arising out of paternity actions. *Lalli v. Lalli, supra,* 99 S.Ct. at 523.

SDCL 29–1–15 provides an appropriate legal framework to evaluate the right of an illegitimate child to inherit from his father if one of several statutory procedures are followed:

SDCL 29–1–15. Inheritance by or through the illegitimate child. Every illegitimate child is an heir of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; and in all cases is an heir of his mother; and inherits his or her estate, in whole or in part as the case may be, in the same manner as if he had been born in lawful wedlock. He shall represent his mother equally with her legitimate children by inheriting any part of the estate of her kindred, either lineal or collateral; but he does not represent his father by inheriting any part of the estate of his kindred, either lineal or collateral, unless before his death his parents shall be intermarried, and his father after such marriage acknowledges him as his child, or adopts him into his family; in which case such child and all the legitimate children are considered brothers and sisters, and on the death of either of them, intestate, and without issue, the other inherit his estate, and are heirs as hereinbefore provided, in like manner as if all the children had been legitimate; saving to the father and mother respectively their rights in the estates of all the children in like manner as if all had been legitimate.

In light of the fact that the United States Supreme Court recognizes that there are legitimate state interests which can justify treating legitimate and illegitimate children differently, we find that Lassle has failed to carry his burden of proving that SDCL 29–1–15 bears no rational relationship to a legitimate state interest.

SDCL 29–1–15, while providing a means for the illegitimate child to inherit from his father, also serves state interests by establishing safeguards to protect the sanctity of a will and to provide for the orderly settlement of estates. As such, equal protection of the law is afforded to illegitimates.

*In Re Estate of Blumreich,* 84 Wis.2d 545, 267 N.W.2d 870 (1978) is a case which is particularly instructive in this analysis. *Blumreich* was a constitutional challenge to the Wisconsin intestacy statute based on the *Trimble* ruling. At the time of this action, Wisconsin recognized paternity orders entered during the lifetime of then deceased fathers. Wisconsin law did not allow illegitimates to bring posthumous paternity actions to establish a right to inherit under the state's intestacy statute.

Facing an issue similar to that which presented itself before *Lalli,* the Wisconsin Court found Wisconsin's intestacy statute constitutional:

"Applying these principles to the instant case, we conclude that sec. 852.05(1), Stats., constitutes a 'carefully tuned' statute sensitive to the conflicting considerations emphasized in *Trimble, supra*. There is no evidence that this statute reflects an impermissible effort to influence the conduct of parents by imposing sanctions on their illegitimate children. Indeed, the statutory provisions do not distinguish between legitimates and illegitimates so much as they distinguish among various categories of illegitimates, and they specifically allow proof of paternity by either of the two methods identified in *Trimble, supra*, as accurate and reliable: prior adjudication and formal acknowledgment. We believe the exclusion of other forms of posthumous proof of paternity represents a reasonable effort '... to eliminate imprecise and unduly burdensome methods of establishing paternity.' *Trimble v. Gordon* ... [97 S.Ct.] at 1466. It has been said that the accusation of paternity is easy to make but difficult to defend against. *See, e.g.: In re Commissioner of Social Services*, 70 Misc.2d 581, 333 N.Y.S.2d 621, 623 (1972). To permit paternity to be established after the death of the putative father, on the basis of his alleged informal, verbal statements, would be to place his estate at an unreasonable disadvantage in defending against spurious claims. The decedent would be unavailable to assert defenses or to assist in the cross-examination of the accusers. Information about his blood, which might conclusively eliminate him as the father, might not be available to his estate. His death thus undermines the reliability of the fact-finding process, and it is not unreasonable to require that a posthumous claim of paternity be supported by the types of documented evidence approved under § 852.05(1)." 267 N.W.2d at 877.

We do not question that there will be some illegitimate children who would be able to establish their relationship to their deceased father without serious disruption of the administration of estates and that, as applied to such individuals, SDCL 29–1–15 appears to operate unfairly. But few statutory classifications are entirely free from the criticism that they sometimes produce inequitable results. Our inquiry under the Equal Protection Clause does not focus on the abstract "fairness" of the statute, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment. *Lalli, supra*.

II. *The trial court correctly foreclosed Lassle from benefiting from the pretermitted heir statute.*

■ Lassle argues that he is a pretermitted heir within the purview of SDCL 29–6–10 *. The trial court ruled that Lassle could not assert a claim as a pretermitted heir under SDCL 29–6–10 unless he met the requirements allowing illegitimates to inherit under SDCL 29–1–15 or unless he met the requirements of legitimacy under SDCL 25–6–1. It is undisputed that none of the procedures designated by the statutes have been followed in this case, thus, we agree with the trial court's decision that Lassle is not a pretermitted heir within SDCL 29–6–10.

Lassle maintains the position on appeal that despite the provisions of SDCL 29–1–15 and SDCL 25–6–1, he is entitled to inherit from Erbe since the legislature failed to exclude illegitimate children from the scope of the term "children" in SDCL 29–6–10 and he was not intentionally omitted by Erbe's will. Lassle further maintains that the Court in *In Re Karger's Estate*, 253 Minn. 542, 93 N.W.2d 137 (1958), relied on by Parent and Mueller, construed its own state statute concerning pretermitted heirs too strictly and that the value of that case should be carefully assessed.

In *Karger*, the Minnesota Supreme Court said:

> such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in § 29–6–9.

---

* When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of

By the weight of authority, when the word 'child' or 'children' is used in this statute it means a legitimate child or children, unless the statutory language reflects an intent to the contrary.

Although this Court has never interpreted the meaning of the word "child," a vast number of courts are in agreement with the court in *Karger*. The majority rule in the United States seems to be that words such as "children" are construed to mean legitimate children and sometimes *recognized* illegitimate children, but not to include *unrecognized* illegitimate children. Annot., 34 A.L.R.2d 455 (1954) and cases there cited. *See also, Johnson v. Mariscal*, 620 S.W.2d 905 (Tex.App. 2nd Dist. 1981) (by virtue of statute defining "child" for purposes of probate code by excluding unrecognized illegitimate child of father, recognized illegitimate child of father may inherit from father without other statutory legitimization); *Remkiewicz v. Remkiewicz*, 180 Conn. 114, 429 A.2d 833 (1980) (under statute providing authority to order support for minor children, the word "children" means legitimate children); *Ivy v. Illinois Cent. Gulf R. Co.*, 510 So.2d 520 (Miss.1987) ("Children" under Federal Employers' Liability Act means children out-of-wedlock as well as children in wedlock, provided paternity is established as required by state statutes); *Scales v. Scales*, 564 S.W.2d 667 (Tenn.App.1977) (Generally, absent clear evidence of contrary intention, words such as "children" will be construed to mean legitimate children and not include illegitimate ones).

In light of this examination of the inheritance rights of legitimate children, recognized illegitimate children and unrecognized illegitimate children, we now determine the rights of Lassle. It is uncontroverted that he is illegitimate, i.e., one born out of lawful wedlock. No evidence has been presented that any statutory means of legitimization has occurred. Lassle is required to show that he was either legitimized under SDCL 25-6-1 or acknowledged in writing before a competent witness under SDCL 29-1-15 before he could seek to establish that his omission, from his alleged father's will, was unintentional. The trial court, after hearing the facts of the case, made the determination that Erbe never signed any sort of written acknowledgement naming Lassle as his son. The court also reasoned that Lassle had failed to establish that Erbe adopted and legitimized him pursuant to SDCL 25-6-1. Therefore, Lassle is not entitled to inherit from the decedent under SDCL 29-6-10.

Affirmed.

MORGAN, SABERS and MILLER, JJ., concur.

WUEST, C.J., dissents.

WUEST, Chief Justice (dissenting).

I would reverse. It offends my sense of justice that an illegitimate child cannot inherit from his father unless he is acknowledged by the father as provided by SDCL 29-1-15 or SDCL 25-6-1. Therefore, I would hold that SDCL 29-1-15 is unconstitutional as it relates to appellant or those persons similarly situated. In determining the constitutionality of a statute which discriminates on the basis of illegitimacy, we must ascertain whether the statutory classification bears some rational relationship to a legitimate state purpose. *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768, 777 (1972); *Trimble v. Gordon*, 430 U.S. 762, 766, 97 S.Ct. 1459, 1463, 52 L.Ed.2d 31, 37 (1977). Furthermore, we must ascertain whether the statute in question is "carefully tuned to alternative considerations." *Trimble, supra*, 430 U.S. at 772, 97 S.Ct. at 1466, 52 L.Ed.2d at 40. Having reviewed this matter fully, I believe the statute at issue is not carefully tuned to alternative considerations and does not bear a rational relationship to a legitimate state interest.

Essentially, SDCL 29-1-15 provides an illegitimate child may be considered an heir of an alleged father only if the alleged father "in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child." The Florida Supreme Court reviewed a statute very similar to SDCL 29-1-15 in the case of

*In Re Estate of Burris,* 361 So.2d 152 (Fla.1978). This Florida statute provided: "Every illegitimate child is an heir of his mother, and also a person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father." *See,* Fla.Stat. § 731.29(1) (1973); *See also, Burris, supra,* at 153. While recognizing the state's interest in the orderly descent of property, the Florida Supreme Court held their statute was unconstitutional under the state and federal constitutions. The Court held the state's interest in the orderly descent of property could be preserved merely by "imposing a higher degree of proof for paternity than is necessary when a determination of maternity is involved." *Id.* at 155.

In sum, the Florida Supreme Court recognized the Florida statute unfairly discriminated against illegitimate children. It further recognized the state's interest in the orderly descent of property could be easily preserved by imposing a higher degree of proof for paternity than that which is used for maternity actions. As a result, the Court determined the Florida statute was not rationally related to legitimate state interests and thus was unconstitutional. Subsequent to the *Burris* decision, a Florida Appellate Court held a person seeking to establish paternity must do so by clear and convincing evidence. *In Re Estate of Odom,* 397 So.2d 420, 425 (Fla.App. 1981). Thus, for several years it has been the law in Florida that an illegitimate child may inherit from an alleged father simply by presenting clear and convincing evidence that the person whom he seeks to inherit from is his natural father.[1]

In this case I would apply the reasoning of the *Burris* court. Other jurisdictions maintain a rule that paternity may be proved by an illegitimate child by clear and convincing evidence. *See Odom, supra; Weber v. Anderson,* 269 N.W.2d 892, 895 (Minn.1978); *C.L.W. v. M.J.,* 254 N.W.2d 446, 450 (N.D.1977). In fact, § 2–109 of the Uniform Probate Code says an illegitimate child should be allowed to prove paternity by the presentation of clear and convincing evidence in a formal action. In

light of these facts, I find it extremely difficult to believe a state's interest in the orderly descent of property would not be preserved were this Court to hold paternity may be established by clear and convincing evidence.

Finally, I do not believe that SDCL 29–1–15 is "carefully tuned to alternative considerations." *Trimble, supra.* In *People v. Wesley,* 140 Misc.2d 306, 533 N.Y.S.2d 643 (Co.Ct.1988) a New York County Court thoroughly discussed the process of DNA testing and concluded such tests are reliable. In *Alexander v. Alexander,* 42 Ohio Misc.2d 30, 537 N.E.2d 1310 (1988), an Ohio Court held a child born out of wedlock could prove his paternity by genetic testing and the probate court could permit disinterment of the putative father to effect such a test. The *Alexander* court stated:

> As evidenced by the recent United States Supreme Court decisions, as well as the Ohio Supreme Court decision in *White v. Randolph* [59 Ohio St.2d 6], 391 N.E.2d 333 (1979) the bottom line to denying an illegitimate child equal inheritance rights is that there is a substantial problem of proof of paternity, especially after the alleged father is dead. Today, however, we are entering into a new area. Science has developed a means to irrefutably prove the identity of an illegitimate child's father. No longer are we dependent upon fallible testimony, nor are we concerned that the decedent cannot be present to defend himself. The accuracy and infallibility of the DNA test are nothing short of remarkable. We live in a modern and scientific society, and the law must keep pace with these developments.

*Id.* 537 N.E.2d at 1314.

In conclusion it is my opinion the appellant should be permitted to maintain this action but must prove paternity by clear and convincing evidence with DNA testing if available, or any other relevant evidence.

---

1. Prior to the rendition of a final judgment in *Burris,* the Florida legislature amended Fla.Stat. § 731.29(1) to allow illegitimate children to prove paternity by an adjudication.